Argued June 7, affirmed October 10, 1962

# MARTIN *v.* ORE INSURANCE COMPANY

375 P. 2d 75

*Burton J. Fallgren,* Portland, argued the cause and filed the brief for appellant.

*Michael G. Holmes,* Portland, argued the cause for respondent. With him on the brief were Herbert H. Anderson and Koerner, Young, McColloch & Dezendorf, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff Theron F. Martin from a judgment which the circuit court entered in favor of the defendant Ore Insurance Company in an action instituted by the plaintiff upon a policy of accident insurance which the defendant had issued to the plaintiff. The parties waived trial by jury.

One Howard Kasch was the employer of the plaintiff Martin. He had discussed with defendant's representative, Darrell Sanders, the possibility of obtaining for his (Kasch's) employees insurance that would afford coverage comparable to that paid out of the State Industrial Accident fund. The negotiations cul-

minated on February 11, 1960, in the signing by Martin of an application for insurance with the defendant. The application contained queries as to the health and background of the applicant, and was designed to procure information vital to the defendant's determination of the nature of the risk involved. The questions material to the case are:

"15. Have you had any disease or disorder of:

\*　　　\*　　　\*

(e) The genito-urinary organs (kidney trouble, prostatitis, diabetes　\*　\*　\*)?

\*　　　\*　　　\*

"17. Have you had any disease or disorder not mentioned in questions 15 or 16?

\*　　　\*　　　\*

"19. During the past 5 years have you consulted a physician or practitioner?"

Each of the above questions was answered in the negative. Martin's signature appears at the bottom of the application, representing that to the best of his knowledge each answer was true.

Although the parties agree that these questions materially affected the defendant's decision to grant Martin a policy and that they were not true, they are in sharp disagreement as to where the responsibility for the untruthfulness lies. Sanders, the agent, claims that he asked Martin each question itemized on the application form, and that he inserted only the answers which Martin gave him. At the trial he testified as follows:

"Q  Would you explain to us how you went over the application with him?

"A  Yes. To begin with I asked Mr. Martin his name, address, birthdate, place of birth—well, his age, I stated that, sex, race, height, how much he

weighed, his occupation, his duties, where he was employed, business address, and to whom he wished to name beneficiary. Then I went further and asked Mr. Martin these questions here which I've checked here. I asked him each question, if any of these— if he had any of these illnesses to which he replied in the negative * * *.

"Q Mr. Sanders, do you recall asking him whether during the past five years he had consulted a physician or practitioner?

"A Yes, I did.

"Q What answer did he give you?

"A No.

*　　　*　　　*

"THE COURT: And every place that you've checked off as no, - - -

"THE WITNESS: Yes, sir.

"THE COURT: - - - he gave the positive answer 'no'?

"THE WITNESS: Yes, he did."

Martin, on the other hand, claims that Sanders asked him only one question relating to his health and that he (Martin) answered that truthfully. An excerpt from his testimony follows:

"Q Mr. Martin, did Mr. Sanders make any inquiry concerning the condition of your health at the time you signed this application for insurance?

"A Yes.

"Q What was that inquiry?

"A He says, 'How's your general health?'

"Q Did he ask you specifically if you had ever suffered from certain-named diseases?

"A No.

"Q Did he ask you specifically if you had seen a doctor or had had an operation - - -

"A No.

"Q - - - within the last five years or any questions of that type?

"A No, nothing except, 'How's your general health?' "

After Martin had signed the application it was submitted by Sanders to the defendant's home office in San Francisco. The defendant refused to issue a policy for the requested coverage. A letter dated February 25, 1960, notified Martin of its decision in the following language:

> "We are in receipt of application for Accident Policy calling for a Principal Sum of $5,000.00, $150.00 monthly indemnity for disability caused by accident, plus $10 per day hospital Rider.
>
> "We have considered the application and we are sorry to advise it will not be possible for us to accept it for the coverage requested. However, we are agreeable to considering the application for a Principal Sum of $3,000.00, $150.00 monthly for disability from accident, plus $5 per day Hospital benefit, at a monthly premium of $5.67 per month.
>
> "If this is agreeable to you, please advise and we shall change the application accordingly, and will also refund to you the difference in premium paid, unless you prefer to have it applied toward next month's premium."

It is clear from that language that the defendant suggested the new figures on the basis of the application which had been submitted.

Sanders received a carbon copy of that letter. After conferring with Martin and Kasch he secured their oral approval of the proposed alterations and so advised the defendant in a letter to his home office. With his letter he also returned the carbon copy of

the letter of February 25, upon which he had handwritten the following:

"Mr. Martin wishes the coverage as outlined here."

Accordingly, the defendant altered the application to comply with the coverage that it had suggested.

After further processing Martin's application defendant mailed to him a letter dated March 24, 1960, enclosing its policy for the coverage which had orally been agreed upon. The letter stated that the policy was effective retroactively to March 7, 1960. Attached to the policy was a photostatic copy of the application which Martin had signed. The alterations which the defendant made are clearly visible thereon. The original entries are likewise plainly visible.

On March 15, prior to his receipt of the policy but subsequent to its effective date, Martin sustained the injury which led to this litigation. He entered a hospital on March 17, and was not discharged therefrom until April 7, 1960. On April 27, 1960, he filed a claim pursuant to the accident policy which the defendant had issued to him.

Upon processing Martin's claim the defendant discovered that it had been misinformed by his application as to his physical condition and medical history. It found that he was an alcoholic, and that he suffered from Laennec's cirrhosis, a liver disorder which is commonly associated with alcoholism. He had been hospitalized for that condition three years prior to the time he had signed the aforementioned application. The defendant further discovered that the plaintiff suffered at times from delirium tremens, which is also associated with alcoholism. The record indicates that complications resulting from alcoholism

considerably extended the time of Martin's recovery from the injury with which this case is concerned. None of these conditions had been drawn to the attention of the defendant although fair answers to the questions on the application would have disclosed them. It is clear that they were material to the risk the insurance company was asked to assume. Sanders testified that he would not have submitted the application to the defendant if he had been aware of the plaintiff's alcohol problem because the defendant refuses to consider the application of an alcoholic.

When the defendant discovered these omissions it wrote a letter to the plaintiff asking him to explain why it had not been informed of his true physical condition. Its inquiry was not answered to its satisfaction, and on July 15, 1960, it tendered to plaintiff the amount of the premiums paid and, because of the false statements contained in the application, declared the plaintiff's policy null and void. Thereupon the plaintiff commenced this action. The trial court found for the defendant.

Plaintiff's first two assignments of error are as follows:

> "The court erred in denying plaintiff's recovery on the basis that there were false representations contained in an alleged application for insurance."

> "The court erred in deciding that plaintiff ratified and adopted as his own the false statements contained in the application form attached to the policy involved."

The legal principles governing those assignments overlap. We will therefore consider them together.

The alterations to Martin's application, to which we have already referred, are crucial to the plaintiff's

case. He contends that since they were made without his written consent the entire application is rendered void under ORS 741.150 (2) which declares the following:

> "No alteration of any written application for any such policy shall be made by any person other than the applicant without his written consent, except that insertions may be made by the insurance company for administrative purposes only, in such manner as to indicate clearly that such insertions are not to be ascribed to the applicant."

He concludes that the policy must be considered as though no written application at all had been made for it, and that the misrepresentations in the altered application can have no bearing on the outcome of this litigation.

The defendant seeks to bring the changes made within the exception noted in the statute by urging that they are mere insertions which were made for the administrative purpose of conforming the application to what the parties had orally agreed upon. It argues that the application is a valid part of the policy to which it was attached, and that the material misrepresentations therein serve to release it from liability under the policy. In the alternative it claims that even if the changes are deemed to fall within the statutory proscription, the plaintiff waived the requirements of ORS 741.150 (2) by claiming benefits in accordance with the revisions the defendant had made.

■■ We cannot agree with the defendant that the alterations were mere administrative insertions within the meaning of ORS 741.150 (2). They could be considered such only if it were assumed that the statute permits alterations to be made for the purpose of conforming the application to the current oral negotia-

tions between the parties. Under that reasoning each such change would qualify as an administrative insertion and would be exempt from the rule that the applicant must consent in writing to changes in the application. That this would severely restrict the effect of ORS 741.150 (2) and would leave the door open to fraudulent claims is obvious. We do not believe the legislature intended such a result. The purpose of the section was patently to introduce into this area of insurance law a measure of certainty and to prevent fraud. The alterations under discussion are clearly of the variety proscribed by the statute.

■ Nor can we agree that the plaintiff waived the requirements of ORS 741.150 (2) by proceeding in this litigation on the basis of the reduced benefits which he and Sanders had agreed upon. The following is taken from 56 Am Jur, § 4, page 105:

> "* * * The doctrine of waiver, from its nature, applies ordinarily to all rights or privileges to which a person is legally entitled, provided such rights or privileges belong to the individual and are intended solely for his benefit. A waiver is not, however, allowed to operate so as to infringe upon the rights of others, or to transgress public policy or morals. Where a law seeks to protect the public as well as the individual, such protection to the state cannot, at will, be waived by any individual, an integral part thereof. The public good is entitled to protection and consideration; and if, in order to effectuate that object, there must be enforced protection to the individual, such individual must submit to such enforced protection for the public good."

82 CJS, § 376, page 875, says:

> "Statutory safeguards against fraud and deception are, by their very nature, mandatory * * *."

See also, *School District No. 1 v. Teachers' Retirement Fund,* 163 Or 103, 95 P2d 720 (1939); *Short v. Mining Co.,* 20 Utah 20 (1899); *Winter v. Swanson,* 138 Neb 597, 294 NW 200 (1940); Vance on Insurance, 3rd ed., sec. 85, page 508. It is clear that the legislature intended the section to protect applicants for insurance from fraud. The public interest demands that freedom to alter written applications for insurance be limited. This is not a mere personal right, but is one for the public benefit. It is therefore mandatory and cannot be waived by the parties. It follows that the defendant violated the requirement that the applicant consent in writing to the proposed changes.

■ Contrary to the plaintiff's contention, however, the defendant's violation of the statutory rule does not render the application nugatory. ORS 741.990 prescribes the penalties for violations of the provisions of ORS Chapter 741 as follows:

> "Any company, corporation or association to which this chapter applies, or any officer thereof, which issues or delivers in this state, or to any citizen thereof, any accident or health policy or contract in wilful violation of the provisions of this chapter shall be punished by a fine of not more than $500 for each offense; and the State Insurance Commissioner may revoke the license of any company or agent thereof which violates any provision of this chapter."

The authority to impose a fine or to revoke a license resides in the courts and in the State Insurance Commissioner respectively. We do not deem it within our province to add to the penalties which have clearly been set forth by the legislature.

It will be noted that our statute nowhere implies that the insured should not be bound by the representa-

tions which he made in an application which subsequently has been altered. He may show that changes have been made, and how he has been prejudiced by them. But the statute does not impose upon the courts the obligation to disregard his representations, where they materially affected the risk assumed by the insurance company.

The defendant in the case at bar concedes that the changes were made. The plaintiff has not claimed that he was prejudiced by them. To the contrary, he admits that he orally agreed to them before they were made and that it was with his permission that the defendant made them. We are therefore satisfied that the application was not expunged by reason of the alterations made by the defendant.

In view of the plaintiff's claim that the letter of February 25, 1960, which we have quoted, constituted a counter-offer by the defendant, the effect of which was to reject in its entirety the application submitted to it, we turn to the negotiations which led to the changes.

We quote the following from Vance on Insurance, 3rd ed., sec 35, page 209:

"* * * In the life insurance business the offer is usually made by the person desiring the insurance, who signs a written application containing such information concerning the subject of the proposed insurance as may be desired by the insurer. * * *"

It is undisputed that Martin's application was an offer containing representations calculated to induce the company to execute an insurance contract with him.

■ If the letter in which the defendant proposed that Martin revise the terms of his offer was in fact a counter-offer, it may well have had the effect of rejecting the application in its entirety. 1 Corbin on Contracts, sec. 88, page 277. In *Morford v. California Western States Life Co.*, 166 Or 575, 113 P2d 629 (1941), the insurance company mailed a policy to the insured which contained terms at variance with those for which the insured had applied. This court held that the policy was actually a counter-offer which could take effect only after it had been accepted by the insured. In the case at bar the defendant did not issue such a policy but sent the applicant the letter to which we have referred. In determining the effect of that letter care must be taken to distinguish between a counter-offer and a request to revise an original offer. Corbin on Contracts, sec. 88, page 275, contains the following:

> "When one party solicits and receives an order or other expression of agreement from another, clearly specifying that there is to be no contract until ratification or assent by some officer or representative of the solicitor, the solicitation is not itself an offer; it is a request for an offer. The order that is given upon such a request is an offer, not an acceptance. * * * The party complying with the request, by giving the order or otherwise, is making an offer; * * *"

Restatement of Contracts, sec. 38, page 46, Comment a, says:

> "* * * A counter-offer must fulfill the requirements of an original offer. There is none unless there is a manifestation sufficient to create a power of acceptance in the original offeror. This distinguishes a counter-offer from a mere inquiry regarding the possibility of different terms; a re-

quest for a better offer, or a comment upon the terms of the offer. * * *"

And from 12 Am Jur, Contracts, § 28, page 526, we quote as follows:

"* * * A general offer must be distinguished from a general invitation to make an offer. Performance of the condition of the former makes a legally binding contract, whereas compliance with the requirements of the latter involves nothing more than an offer, which may or may not be accepted by the party who issued the invitation therefore. * * * It is impossible to formulate a general principle or criterion for its determination. Accordingly, whether a communication naming a price is a quotation or an offer depends upon the intention of the owner as it is manifested by the facts and circumstances of each particular case."

See also, 29 Am Jur, Insurance, § 197 to 200, page 587 to 590. By its letter of February 25, 1960, the defendant stated merely that it could not accept the application "for the coverage requested," not that it rejected the application. Then it said: "However, we are agreeable to considering the application for * * *." a stated lesser amount. It clearly appears from that language that first, the defendant invited the plaintiff to revise his offer to comply with the suggested terms and second, that it indicated a willingness to consider such a revised offer. It did not bind itself to accept the same. This is not the language of a counter-offer. Negotiating for more favorable terms as the defendant did in the present case is not a counter-offer and does not constitute an implied rejection of the application submitted by the plaintiff.

Nor does the letter by its terms indicate that the plaintiff's application was rejected. The defendant

declared itself prepared to consider the application, but for a different coverage. The language of the letter compels the conclusion that the defendant at all times regarded the application as valid, its representations as binding, and that it based its later decision to issue Martin a policy thereon. A copy of the letter was sent to Martin and he does not deny having received it. In the absence of evidence to the contrary we conclude that he was familiar with its contents. Even if he had not seen it, he must have known that the terms agreed upon were based on the representations which he had made in his application. Under these circumstances we cannot say that the trial judge erred in holding the plaintiff to the representations contained in the application.

The foregoing shows that (1) the written application which the plaintiff signed remained valid and retained its representations despite the changes which the defendant made in the parts which pertained to the amount of coverage, (2) the policy upon which this action was brought was issued pursuant to those representations (3) the application contained misrepresentations which were material to the risk which the defendant assumed and (4) a copy of the application was attached to the policy when it was delivered to the plaintiff. We will now consider whether the plaintiff ratified the false statements contained in the application.

■ ORS 736.305 (1) reads as follows:

"Every contract of insurance shall be construed according to the terms and conditions of the policy, except where the contract is made pursuant to a written application therefor and such written application is intended to be made a part of the insurance contract. In that case, if the company delivers a copy of such application to the assured,

thereupon such application shall become a part of the insurance contract. If the application is not so delivered to the assured, it shall not be made a part of the insurance contract."

*Comer v. World Insurance Company,* 212 Or 105, 318 P2d 916 (1957), construed the section just quoted to mean that if the insurer complies with its provision by attaching to the policy a copy of the application, by making the latter a part of the contract, and by delivering to the insured the policy with the annexed application, the insured is charged with knowledge of the application's contents and it becomes his duty to inform the insurer of any misrepresentations which he finds therein. The insured had an opportunity to read the application before he signed it, but if he neglected that opportunity it becomes his duty to read it when a copy of it and of the policy are delivered to him. If he finds something in the application which he believes does not state the truth as to his physical condition or medical history it is then his duty to call that fact to the insurer's attention. If he remains silent, he adopts the answers as they are written as his own and becomes estopped to claim that he is not responsible for them. See also *Reserve Life Insurance Co. v. Howell,* 225 Or 71, 357 P2d 400 (1960).

It will be noted that in the Comer case the conjoined insurance policy and application were delivered on the effective date of the policy and prior to the injury for which recovery was sought. By contrast, in the case before us, the accident preceded delivery of the instruments. The application was signed and the policy went into effect on March 7, 1960; the injury occurred on March 15, 1960; and the policy with the attached application was not mailed to the insured until March 24, 1960.

Plaintiff contends that defendant's delay in forwarding the policy made it impossible for him to discover the false assertions in the application prior to his injury. He urges that ORS 736.305 contemplates that ratification of the application by the insured takes effect on the day on which he receives the policy, and has no effect on the policy prior to that date. He concludes that "from March 7 until March 24, 1960, plaintiff had a policy not incorporating any application, and it is immaterial whether by reason of delivery the application was incorporated into the policy after March 24, 1960." The fact that ratification by the insured occurs after the date of injury does not change the meaning of the words of the statute as interpreted in the Comer case. The policy of ORS 736.305 (1), as expressed in that decision, in authorizing the delivery of a copy of the application, is to permit the insured to discover the falsity of the statements in the application, if they are false, and to inform the insurer thereof. As soon as he has had a reasonable opportunity to do this the application becomes a part of the policy. The application then assumes the effective date of the policy itself and is a part of the contract.

This process need result in no prejudice to the insured. By notifying the insurer of the error he demonstrates good faith and retains his right to show that he is not responsible for the false answers. But where, as in the case at bar, he fails to do so whether by neglect or design, the false answers in the application will be imputed to him.

■ The policy and the attached application were mailed to the plaintiff on March 24, 1960. His claim is dated April 24, 1960, one month later. On the face of the policy itself, in large capital lettering appears the

following admonition: "PLEASE READ YOUR POL-ICY." Contained in the policy is the following:

> "The insurance hereunder is granted in consideration of the statements in the application for this policy, a copy of which is attached hereto and made a part hereof * * *."

As in the Comer case, the copy referred to in the policy was a photostatic reproduction and was therefore black in color. It was in sharp contrast to the white paper upon which the policy was printed. It was bound to attract attention even upon a casual inspection. Plaintiff does not contend that he did not read the policy and the application after he received them from the defendant. Nor does he make a showing that he was unable to do so. We conclude that he had a reasonable opportunity to discover the misrepresentations with which we are concerned, and that under the rule of the Comer case his silence constituted a ratification of the statements contained in the application. The plaintiff's first and second assignments of error are without merit.

As his third assignment of error the plaintiff states:

> "Defendant's affirmative defenses were inadequate in that defendant did not plead the defense of fraudulent inducement."

Under the rule of the Comer case the plaintiff has ratified by his silence the representations contained in his application regardless of whether he was responsible for them. Since it is not necessary to show that the insured made the false statements it is unnecessary to take the additional step of alleging that he made the insertions knowing them to be false. No allegation of fraudulent inducement was necessary.

The plaintiff's third assignment of error is without merit.

Plaintiff's fourth assignment of error urges that:

"Defendant is estopped by its conduct from asserting the defense of misrepresentation."

Specifically, the conduct to which the plaintiff alludes is (1) the defendant's delay in delivering the policy and the attached application to the plaintiff, and (2) the assurance which the defendant gave the plaintiff that it would provide insurance comparable to State Industrial Accident coverage. In view of our findings which have gone before, we fail to see how these contentions aid the plaintiff's case.

■ Any delay for which the defendant may have been responsible in delivering to the plaintiff a copy of the application is immaterial since the policy was concededly in effect at the time of the accident. We have shown that the plaintiff was in no way prejudiced by the fact that he did not receive the policy until after his injury. The delay was of no consequence in this case.

■ Nor can the assurance given by the agent Sanders be deemed to have prejudiced the plaintiff. It would be patently unreasonable to maintain that because the agent expressed an opinion that insurance comparable to State Industrial Accident coverage was available, that the defendant had given the plaintiff a carte blanche which unconditionally guaranteed the coverage requested. At all times the negotiations depended upon whether, in the opinion of the home office, the plaintiff qualified as a worthwhile risk. No reason appears why the parties should have thought otherwise. Nor does the plaintiff show that in the absence

of such assurance he would have applied elsewhere before learning whether the defendant would accept his application. The contrary appears to be true. It appears likely that if the plaintiff had revealed his true physical condition he would have been unable to obtain coverage from any source. Under these circumstances we cannot agree that the plaintiff was prejudiced by the defendant's conduct. We find the fourth assignment of error without merit.

Contrary to the assumption of the plaintiff in his brief, this case is not concerned with the cancellation of an insurance policy. Since the policy which the defendant issued was induced by material misrepresentations, it was voidable at the insurer's option. See 1 Corbin on Contracts, sec. 6, page 11; 1 Restatement of Contracts, sec. 13, page 12; Vance on Insurance, sec. 67, page 386 et seq. When the defendant discovered these misrepresentations it did not act to cancel a valid policy. Rather it rendered void a policy which had been voidable since the day on which the application had been ratified by the plaintiff. The section of the statute, ORS 741.130 (2)(h), which plaintiff seeks to invoke clearly does not apply in such a case.

The judgment of the circuit court is affirmed.