Submitted on remand from the Oregon Supreme Court July 23, 1999, reversed in part; otherwise affirmed January 5, 2000

NORTHWEST NATURAL GAS COMPANY,
an Oregon corporation,
*Appellant,*

*v.*

CHASE GARDENS, INC.,
*Respondent,*

*and*

KEY BANK OF OREGON,
an Oregon state banking corporation;
Willamette Production Credit Association,
an Oregon business;
Centennial Bank,
an Oregon state banking corporation;
Orix Credit Alliance, Inc.,
an Oregon corporation;
Turco Engineering, Inc.,
an Oregon corporation;
Benno Dobbe, dba Holland America Bulb Farms,
a Washington corporation;
Westar Marketing Company,
abn Oregon Natural Gas Development Corporation,
an Oregon corporation;
and State Accident Insurance Fund,
an Oregon corporation,
*Defendants.*

(16-91-01370; CA A90481)

995 P2d 555

John R. Faust, Jr., and Schwabe, Williamson & Wyatt for appellant.

Joel De Vore and Luvaas, Cobb, Richards & Fraser for respondent.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

This case is before us on remand from the Supreme Court so that we may consider Chase's[1] counterclaim for breach of contract. *Northwest Natural Gas Co. v. Chase Gardens, Inc*, 328 Or 487, 982 P2d 1117 (1999). We reverse on that counterclaim. In accordance with the Supreme Court's decision, we also reverse the judgment for Chase on its counterclaim for intentional interference with Chase's relationship with its bank. We affirm the judgment for NWNG on its claim for breach of contract.

In our original opinion, we affirmed the judgment in favor of Chase for intentional interference. We did not expressly decide Chase's counterclaim for breach of contract because the damages that Chase recovered on that counterclaim were less than the judgment in its favor on the counterclaim for intentional interference. *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 146 Or App 249, 933 P2d 370 (1997). On reconsideration, we adhered to our holding, in part because we concluded that NWNG had not preserved the causation argument that it made in its petition for rehearing. *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 147 Or App 586, 938 P2d 778 (1997). The Supreme Court allowed NWNG's petition for review, held that it had adequately preserved the causation argument, and reversed the judgment on the intentional interference counterclaim for lack of proof of causation. The court then remanded the case to us so that we could decide the breach of contract counterclaim. 328 Or at 502-03.

■ We will rely on the statement of the facts in our original opinion. 146 Or App at 252-58. The heart of Chase's breach of contract counterclaim is its argument that the promise that a NWNG official made before Chase entered into the contract, that "we will work with you," was part of the contract. That promise, according to Chase, limited NWNG's ability to file an agricultural services lien or to seek other noncontractual remedies if Chase failed to pay in accordance with the contractual terms. Chase argues that when

---

[1] We will refer to the parties in the same way that we and the Supreme Court have done in the previous opinions in this case.

NWNG filed the lien, it violated its contractual promise to accommodate Chase's agricultural cycles and failed to act in good faith. Although we did not expressly decide the contractual issues in our original opinion, our discussion of whether NWNG had an improper purpose when it filed the lien, together with the Supreme Court's decision on causation, essentially resolve the issue against Chase's position.

In its intentional interference counterclaim, Chase alleged that NWNG's purpose in filing the lien was improper because its objective was to obtain a more favorable position in relation to Chase's other creditors "than allowed by law *or agreement between the parties * * *.*" We concluded, however, that because "the contract, by operation of law, permitted NWNG to file the lien, its purpose in doing so cannot be improper * * *." 146 Or App at 259 (emphasis added). In reaching that conclusion, we held that because NWNG had an express statutory right to a lien when it entered into the contract with Chase, that remedy was necessarily within the contemplation of the parties and became part of the contract by operation of law. *Id.* at 259-60. We also held that the fact that the contract expressly gave NWNG certain remedies in case of Chase's default did not prevent NWNG from exercising other remedies that it had under existing law. We then stated that, "[e]ven if we were to look outside the writings, NWNG's knowledge of Chase's situation and its statement that 'we will work with you' do not constitute a waiver of a statutory right that is otherwise part of the contract." *Id.* at 260.

Those statements resolve all of Chase's contractual issues relating to NWNG's action in filing the lien. The remaining issues involve whether NWNG breached its implied contractual obligation to act in good faith by some of its other actions, particularly by demanding an excessive deposit in the January 9 letter. However, even if NWNG did breach that duty, the Supreme Court's conclusion that there is no evidence that the January 9 letter caused the bank to withdraw Chase's line of credit means that the breach did not cause Chase any harm. 328 Or at 501-02.[2] Chase's position

---

[2] At trial, NWNG's counsel moved for a directed verdict on both the intentional interference and the contract claims on the ground that Chase had failed to prove

has always been that it was the loss of the line of credit that forced it to shut down; without a causal connection between NWNG's alleged breach of the implied duty of good faith and the bank's action, there is no basis for an award of damages. The trial court should have granted the motion for directed verdict on Chase's counterclaim for breach of contract.

Judgments for Chase on counterclaims reversed; otherwise affirmed.

---

causation. The Supreme Court's holdings that it thereby preserved the precise argument that NWNG made on appeal and that that argument is correct thus applies to the contract claim as much as to the intentional interference claim.