Argued and submitted May 8, 2001, decision of Court of Appeals and judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings February 7, 2002

# NORTHWEST NATURAL GAS COMPANY,
an Oregon corporation,
*Respondent on Review,*

*v.*

## CHASE GARDENS, INC.,
*Petitioner on Review,*
*and*

KEY BANK OF OREGON,
an Oregon state banking corporation;
Willamette Production Credit Association,
an Oregon business;
Centennial Bank,
an Oregon state banking corporation;
Orix Credit Alliance, Inc.,
an Oregon corporation;
Turco Engineering, Inc.,
an Oregon corporation;
Benno Dobbe,
dba Holland America Bulb Farms,
a Washington corporation;
Westar Marketing Company,
abn Oregon Natural Gas Development Corporation,
an Oregon corporation;
and State Accident Insurance Fund,
an Oregon corporation,
*Defendants.*

(CC 16-91-01370; CA A90481; SC S47259)

39 P3d 846

Robert H. Fraser, of Luvass, Cobb, Richards & Fraser, PC, Eugene, argued the cause for petitioner on review. With him on the briefs were Joe B. Richards and David A. Jacobs, Eugene.

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the briefs for respondent on review.

Before Carson, Chief Justice, and Gillette, Leeson, Riggs, and De Muniz, Justices.**

---

** Kulongoski, J., resigned June 14, 2001, and did not participate in this decision. Durham and Balmer, JJ., did not participate in the consideration or decision of this case.

DE MUNIZ, J.

## DE MUNIZ, J.

In 1991, Northwest Natural Gas (NWNG) brought an action against Chase Gardens, Inc. (Chase) for breach of contract, seeking to collect money that Chase owed for natural gas and natural gas transportation services. Chase counterclaimed, alleging breach of contract and intentional interference with Chase's relationship with its lender, Centennial Bank (the bank). The jury found for NWNG on its breach of contract claim and for Chase on its counterclaims. The trial court entered judgment for NWNG on its contract claim and for Chase on its intentional interference counterclaim. The trial court did not enter a money judgment on Chase's breach of contract counterclaim, because the damages duplicated those of the tort claim.

NWNG appealed, arguing that the evidence that Chase presented was not sufficient to permit a jury to find that NWNG intentionally had interfered with Chase's business relationship with its lender or had breached any term of the agreement with Chase. The Court of Appeals affirmed the tort judgment, concluding that it was unnecessary to resolve the breach of contract counterclaim because, as noted above, the damages that the jury assessed on each claim were duplicative. *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 146 Or App 249, 933 P2d 370 (1997) (*Chase I*).

This court allowed review in *Chase I* and reversed the decision of the Court of Appeals, concluding that, with regard to its intentional interference claim, Chase had failed to prove that NWNG had used improper means that had damaged Chase's relationship with its lender. *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 982 P2d 1117 (1999) (*Chase II*). This court remanded the case to the Court of Appeals to resolve the issues related to Chase's breach of contract counterclaim.

On remand, the Court of Appeals, relying in large part on its earlier decision (*Chase I*) and this court's decision on review (*Chase II*), concluded that Chase's breach of contract judgment could not be sustained on either of the theories that Chase had presented to the jury. *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 164 Or App 763, 995

P2d 555 (2000) (*Chase III*). This court again allowed review, this time to consider whether the Court of Appeals, consistent with Article VII (Amended), section 3, of the Oregon Constitution, correctly had concluded that there was no evidence from which a jury could find the elements of Chase's breach of contract counterclaim.

For purposes of this opinion, we rely primarily on the facts set out in the Court of Appeals' statement of facts in *Chase I*, which the parties do not dispute.

On review, Chase asserts that, in setting aside the jury verdict on its breach of contract counterclaim, the Court of Appeals did not review the evidence in the manner that Article VII (Amended), section 3, of the Oregon Constitution, prescribes.[1] Chase contends that, had the Court of Appeals done so, it would have concluded that there was evidence in the record to support the jury's verdict on its breach of contract counterclaim.

NWNG does not quarrel with this court's constitutionally limited function in reviewing the record for evidence to support the jury's verdict. Rather, it argues that, for various but related reasons, the Court of Appeals correctly set aside the jury's verdict on Chase's breach of contract counterclaim.

As a preliminary matter, NWNG asserts that this court does not need to review the record for evidence to support the jury's verdict. NWNG contends that the cause of Chase's damage under either theory—tort or contract—was the same, that this court's first decision establishes that NWNG's lien caused the bank to withdraw the line of credit, and that the lien is what caused Chase to close its doors. In support of that assertion, NWNG relies on two statements contained in *Chase II* regarding the cause of Chase's damage. NWNG points out that, in *Chase II*, this court stated that,

---

[1] Article VII (Amended), section 3, of the Oregon Constitution, provides:

"In actions at law, where the value in controversy shall exceed $750, the right of trial by jury shall be preserved, and *no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict.*"

(Emphasis added.)

"[b]ased on our review of the record, we conclude that there was no evidence presented at trial that NWNG's conduct caused Chase's damage." 328 Or at 501. Later, this court stated that, "Chase failed to prove that NWNG's [January 9] letter caused the bank to revoke Chase's line of credit." 328 Or at 502.

■ We reject NWNG's argument that *Chase II* resolved any issue related to the breach of contract counterclaim and, as explained below, we also reject the assertion that the jury had to find that the cause of Chase's damages was the same under both claims. The statements from *Chase II* that NWNG relies on dealt only with the elements of Chase's intentional interference counterclaim. In that opinion, this court refrained from addressing Chase's breach of contract counterclaim. As part of the disposition of that case, this court stated that remand was necessary "for consideration of the issue presented on appeal related to Chase's breach of contract claim," and, "[a]s to that issue, we express no opinion." 328 Or at 503. Those dispositional remarks demonstrate unequivocally that this court considered the breach of contract counterclaim to involve separate issues that were not resolved in the decision regarding Chase's intentional interference counterclaim.

As noted, on remand, the Court of Appeals relied on its earlier decision (*Chase I*) and this court's decision on review (*Chase II*) to set aside the jury's verdict on Chase's breach of contract counterclaim. First, the court held that, because NWNG legally was permitted to file the lien, doing so did not violate any contractual promise, *e.g.*, "we will work with you," that NWNG allegedly had made to accommodate Chase's agricultural revenue cycles. Second, the court held that, even if NWNG had breached its implied contractual obligation to act in good faith by "demanding an excessive deposit in the January 9[, 1991,] letter," there was no evidence that the January 9 letter caused the bank to withdraw Chase's line of credit and that, "without a causal connection between NWNG's alleged breach of the implied duty of good faith and the bank's action, there [was] no basis for an award of damages." *Chase III*, 164 Or App at 767-68.

■   For reasons explained below, we reject the Court of Appeals' conclusion that the jury's verdict could not be sustained without evidence of a "causal connection between NWNG's alleged breach of the implied duty of good faith and the bank's action." *Id.* We conclude that there is evidence to support the jury's verdict that NWNG breached its contractual obligation of good faith and that that breach damaged Chase. Accordingly, we confine our analysis to that allegation of breach.

Because the jury returned a verdict for Chase, this court must, in accordance with Article VII (Amended), section 3, uphold the jury's verdict, unless our review of the record reveals that there is no evidence from which the jury could have found the facts necessary to establish the elements of Chase's breach of contract counterclaim. *See Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984) (illustrating proposition). Under that constitutional mandate, our review of the record is circumscribed by the case actually presented to the jury through pleadings, evidence, and jury instructions.

Chase alleged, as part of its breach of contract counterclaim, that NWNG had breached the agreement of good faith and fair dealing by asserting orally and in its letter of January 9, 1991, that it would not release a $49,000 lien that it held against Chase, unless Chase paid NWNG $100,000. Chase relied on that theory at trial. Indeed, Chase's counsel advanced that theory to the jury during closing argument, asserting that NWNG had not acted in good faith by making an excessive demand in the letter of January 9, by requiring Chase to pay NWNG $100,000 to secure the release of the $49,000 lien, and by refusing to negotiate the release of the lien for less than that amount.

With regard to that allegation, the trial court instructed the jury that "Chase Gardens has alleged that Northwest Natural Gas breached the implied duty of good faith and fair dealing that exists in every contract in Oregon." The court also instructed the jury that "[t]he implied duty of good faith in every contract is to be applied in the manner that will effectuate the objectively reasonable expectations of

the parties to the contract." The trial court provided no further definition of the implied obligation of good faith, and NWNG took no exception.[2] Thus, it was left to the jury to decide how to construe the letter, NWNG's surrounding conduct, whether NWNG's conduct was inconsistent with its duty to "effectuate the objectively reasonable expectations of the parties to the contract," and, if so, whether Chase was harmed by that conduct.

On the merits, NWNG first argues that the contents of its January 9, 1991, letter cannot be "found to be the 'excessive demand' Chase claims it to have been" and, second, "even if it were, it did not cause and could not have caused Chase's damage." With regard to the first argument, NWNG asserts that the January 9 letter was "unequivocally a proposal for continuation of gas service" and said nothing about what NWNG demanded for satisfaction of the lien or what it would do if the validly liened amount were tendered. Thus, NWNG maintains that the January 9 letter could not be construed as an "excessive demand" and could not, as a matter of law, constitute a breach of the contract with Chase.

The jury was not required to construe the January 9, 1991, letter as NWNG asserts. Instead, the jury could have found that the letter involved much more than whether NWNG would continue gas service. NWNG knew that Chase's revenue was cyclical when it entered into the contract and it also knew that Chase needed the Valentine's Day season to survive. Further, there is evidence that, before writing the January 9 letter, NWNG's credit manager warned his superiors that, if Chase stayed in business, NWNG would have to deal with Chase again the next year. The jury could have found that the January 9 letter was an "excessive demand," because the letter revealed an intent on NWNG's part not to accept less than twice what NWNG was entitled to as a condition for removing the lien and not to negotiate a removal of the lien for less, because NWNG's intended purpose was to close Chase down rather than to continue the existing relationship. We conclude that there is

---

[2] No question regarding the accuracy or appropriateness of the instruction relating to the implied obligation of good faith is before us in this case.

evidence in the record to support a finding by the jury that NWNG breached its implied obligation of good faith.

■ Turning to NWNG's second argument, it contends, as noted above, that the cause of Chase's damages under its tort or contract counterclaim was the same. Therefore, NWNG argues that the Court of Appeals was correct on remand when it held that, even if NWNG did breach its obligation of good faith, "the Supreme Court's conclusion that there is no evidence that the January 9 letter caused the bank to withdraw Chase's line of credit means that the breach did not cause Chase any harm. * * * [W]ithout a causal connection between NWNG's alleged breach of the implied duty of good faith and the bank's action, there is no basis for an award of damages." *Chase III*, 164 Or App at 767-68. We disagree.

The intentional interference counterclaim focused on the effect that NWNG's conduct had on the relationship between Chase and the bank, its lender. The breach of contract counterclaim, however, presented a separate theory of liability to the jury concerning the relationship between Chase and NWNG directly. As noted, the trial court instructed the jury that the obligation of good faith is implied in every contract in Oregon. Also, the trial court instructed the jury, in part, that it could award damages to Chase if it found that "Chase Gardens was actually damaged by Northwest Natural Gas Company's breach of a term in any agreement that existed."[3] Under that theory and given those instructions, the jury was entitled to determine whether NWNG's conduct, as evidenced by the January 9, 1991, letter, played a role in the demise of the business.[4] Therefore,

---

[3] The entire jury instruction provided:

"In order for Chase Gardens to recover on its claim of breach of contract, you must find the following elements have been proven by Chase Gardens by a preponderance of the evidence: That there was a contract containing the terms that Chase Gardens claims was breached; that Chase Gardens performed its obligations under any agreement that existed; that Northwest Natural did not perform its obligations under any agreement that existed; and that Chase Gardens was actually damaged by Northwest Natural Gas Company's breach of a term in any agreement that existed."

[4] NWNG did not argue in the trial court and does not argue on appeal that Chase's theories of recovery were inconsistent factually; neither did NWNG take exception to the jury's separate verdicts on that ground.

the lack of any connection between the January 9, 1991, letter and the bank's withdrawal of the line of credit was not dispositive of Chase's breach of contract counterclaim. The Court of Appeals' conclusion to the contrary was incorrect.

Nevertheless, NWNG argues that there is no evidence in the record that Chase understood the January 9 letter to be a refusal to lift the lien for the lawful amount—which Chase could have compelled—or that the alleged "excessive demand" influenced Chase to shut off the gas and close down the business.

In exercising review under Article VII (Amended), section 3, we do not weigh evidence; rather, we consider the evidence, including inferences, in the light most favorable to the party that prevailed before the jury. *See Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977) (so stating). In this case, that was Chase.

On cross examination, in response to a question about the cause of the closure of Chase Gardens, President William Chase testified that, "when I got the message that there was absolutely no negotiations and opportunity to remove the crop lien that had killed our line of credit, that was what did it right there." As noted above, there was evidence that NWNG was made aware of the cyclical nature of Chase's revenue prior to entering into the contract with Chase, knew that Chase was vulnerable financially, and knew that Chase needed the Valentine's Day returns to survive. From that evidence and Mr. Chase's testimony, the jury could have found that NWNG's excessive demand in the January 9 letter precipitated the closure of the business. Given the instructions that the jury received, that was all that the jury was required to find in order to determine that NWNG had breached its implied obligation of good faith and that the breach actually harmed Chase. Therefore, under Article VII (Amended), section 3, we are required to sustain the jury's verdict on the breach of contract counterclaim.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part. The case is remanded to the circuit court for further proceedings.