DeVORE, J.
*428 This case involves a conflict between a tenant and landlord about who pays the cost resulting from a fallen tree in a manufactured dwelling park. At issue are a statute on trees in rented spaces ( ORS 90.727 ), a statute on "unilateral amendment" of a rental agreement ( ORS 90.510(4) ), the terms of the parties' lease, and the trial court's award of attorney fees incurred in court-annexed arbitration. Defendant Sunset Village, LLC (landlord), appeals from general and supplemental judgments that awarded plaintiff Morat (tenant) $1,180 in damages for the costs of tree removal and $33,847 for attorney fees and costs in all underlying proceedings.
We conclude that "unilateral amendment" under ORS 90.510(4) is a permissible means of bringing a rental agreement into compliance with the statute on trees in rented spaces ( ORS 90.727 ) but that ORS 90.510(4) is not itself a limitation on that tree statute. We further conclude that the tree statute does not supersede the terms of the particular lease at issue here. As a result, our construction of the statutes does not disturb the trial court's conclusion about this particular lease. The trial court concluded that the parties' lease required landlord to pay the cost of tree removal. Although we may construe the statutes differently than did the trial court, we agree with the trial court's ultimate conclusion that landlord is responsible for the cost of tree removal. And, we agree that the trial court properly awarded attorney fees incurred in court-annexed arbitration. Therefore, we affirm.
Landlord asserts three assignments of error. We do not address the first assignment because it is not reviewable.[1]
*429 In its second assignment, landlord contends that the trial court erred in "reasoning" that ORS 90.727 does not govern the cost of tree removal. Landlord contends that, even if landlord did not amend the lease to reflect the statute, ORS 90.727 should apply to make the cost of tree removal the tenant's responsibility. Finally, landlord contends that the trial court lacked authority to award attorney fees incurred in court-annexed arbitration under the circumstances of this case.
In recounting matters tried to the court as the factfinder, we view the evidence, including reasonable inferences, in the light most favorable to the prevailing party. See *330 Northwest Natural Gas Co. v. Chase Gardens, Inc. , 333 Or. 304, 313, 39 P.3d 846 (2002) (on contract claim, the appellate court views facts determined by the factfinder in the light most favorable to prevailing party).
Tenant is a resident in Sunset Village, a manufactured dwelling park for residents 55 or older. In September 1992 he signed a lease that incorporated the rules and regulations of the park. Under a heading titled "Improvements to the leased space," the lease provided that the "leased space shall be landscaped by tenant, and shall be maintained at all times in a neat, clean, and orderly condition." The incorporated rules added a section on "lot maintenance" that provided, "Tenants are responsible for maintaining all lawn areas, flowers, and shrubbery within their space." Tenant testified that those documents comprised the parties' agreement and that they had not been amended at any time since.
For the next 23 years of his residency, according to tenant, the park management "always took care of the cost and the removal of any tree that blew over."[2] For about *430 25 years, ending in 2014, Gerht-Salem was the onsite manager of the park. She had prompted tenant to sign the lease agreement. During her tenure, she said there had been no amendment of the lease or incorporated rules. The park had then been owned by her father, and he had always said that trees are real property and that it was his property. She understood the policy to be, "If the trees have fallen, then we remove them. We pay for them[.]" Gerht-Salem implemented the policy. She recalled a bad storm in 2008 when 15 or 16 trees fell. The park assumed responsibility and paid about $20,000 for tree removal. She added that, when a tree was blown down, she did not consider its removal to be in the nature of pruning.
On the night of February 8, 2015, a storm caused a tall conifer on tenant's space to fall and damage a second tree. The next morning, Evans, the current onsite manager of Sunset Village, told tenant to pay to remove the fallen and damaged trees. Later, Evans sent a letter to tenant with a copy of a recent statute on trees in manufactured dwelling parks, ORS 90.727.[3] The letter advised tenant that, pursuant to ORS 90.727, it was his responsibility to pay for the tree removal. Tenant objected that tree maintenance was landlord's responsibility, arguing that landlord had always taken care of the cost of downed trees. Nonetheless, concerned about his tenancy, tenant solicited several bids, advised landlord, and, under protest, paid $1,180 for the trees' removal.
Thereafter, tenant filed a complaint against landlord in which he alleged, in part:
"5. Maintenance Agreement. As part of the tenancy agreement between [tenant] and [landlord], and by established practice, [landlord] was and is responsible for the maintenance and removal of trees within [tenant's] rental space."
*431 Tenant alleged that landlord's refusal to remove the trees at its expense was a breach of the tenancy agreement. Tenant alleged a right to recover attorney fees under the tenancy agreement and ORS 90.255, a statute that provides for recovery of attorney fees in an action on a rental agreement. In its trial memo, landlord acknowledged that the claim was "for damages for breach of the residential rental agreement."
The case was framed by the trial court's ruling on landlord's motion for summary judgment that preceded trial. In its letter opinion, the trial court described the issues presented:
"[Landlord] framed the issue on summary judgment as whether or not [tenant] complied with the requirements of ORS 90.727. However, the Court finds that there is a dispute as to whether ORS 90.727 applies in this case. [Landlord] argues that ORS 90.727 automatically applied to the rental agreement pursuant to *331 ORS 90.510. [Tenant] argues that ORS 90.510 requires a party to take some action to unilaterally amend the contract. The Court agrees with [tenant]."
After construing ORS 90.510 on unilateral amendment of a rental agreement, the trial court concluded that
"some affirmative action is required in order to unilaterally amend a rental agreement. In light of this, two issues of material fact remain: (1) whether the letter and its enclosures (a copy of ORS 90.727 and Section 16, Chapter 443, Oregon Laws 2013) provided to [tenant] was sufficient to inform him that landlord was unilaterally amending the rental agreement and, if so, (2) when notice was received by [tenant]."
The court denied landlord's motion for summary judgment, and the parties proceeded to trial with the issues thus framed.
The case was tried to the court without a jury. In mid-trial at the conclusion of tenant's evidence, landlord offered a motion "for directed verdict," first arguing that ORS 90.727 made trees that are not "hazard" trees the responsibility of the tenant whether or not the lease was amended, and secondly arguing that, because the lease requires the tenant to keep the space clean, neat, and orderly, the tenant must remove fallen trees. The trial court denied the motion.
*432 Later, at the conclusion of trial, landlord reiterated the same arguments in closing argument to the court. By that point, landlord's argument had evolved into two related contentions as to why ORS 90.727 was applicable as a matter of law to the parties: Landlord argued that "unilateral amendment" had occurred by operation of law under ORS 90.510(4)(c). Alternatively, landlord argued that the legislature intended ORS 90.727 to apply to all landlord-tenant relationships even in the absence of "unilateral amendment."
In a letter opinion after trial, the court concluded:
"Landlord, defendant had a duty to remove the tree and incur the cost. Based on the evidence, the court finds that ORS 90.727 does not apply. Amendment to the rental agreement required unilateral action and notice. Neither occurred prior to the removal of the subject trees. The court finds in favor of tenant and awards $1,180.00 in damages and costs."
The trial court entered judgement for tenant for $1,180 in damages. The court also entered a supplemental judgment for $33,847 for tenant based on the attorney fee provision in the lease and ORS 90.255.
On appeal, landlord assigns error to the trial court's ruling that ORS 90.727 does not apply so as to make tree removal the tenant's responsibility. The second assignment asserts that
"the trial court incorrectly ruled after trial that ORS 90.727 did not apply to the parties. As ORS 90.727 did apply; and as Plaintiff did not sustain his burden of proof that the trees were hazard trees; the trial court's ruling should be reversed and the case dismissed."
Specifically, landlord contends that the trial court erroneously interpreted ORS 90.510(4) to require a unilateral amendment to a rental agreement before ORS 90.727 could have any effect whatsoever on a landlord-tenant relationship.[4] Landlord contends that "[b]y operation of *433 ORS 90.510(4)(c), those statutory changes [resulting from the enactment of ORS 90.727 ] modified the parties' rental agreement without the need for 'action' by anyone." In landlord's view, ORS 90.510(4)(c), properly construed, means that the mere enactment of ORS 90.727 resulted in a "unilateral amendment" to the parties' rental agreement, displacing their prior *332 agreement regarding removal of fallen trees. Alternatively, landlord contends that, even if the parties' agreement was not amended by the enactment of ORS 90.727 by operation of ORS 90.510(4)(c), "the agreement is in direct conflict with ORS 90.727 and cannot be enforced." Landlord contends that the trial court's interpretation of ORS 90.510 will lead to an impermissible result: that "the parties can legally 'opt out' of ORS 90.727 by simply taking no action to amend the law into their rental agreement."
Landlord's contention that ORS 90.727 determines who pays the cost of tree removal in this case implicates two questions: First, before ORS 90.727 may apply to the parties' relationship, must landlord "unilaterally amend" the rental agreement, as ORS 90.510(4) permits? Second, if ORS 90.727 can apply to the parties' relationship regardless whether their rental agreement was amended, does that statute override terms that are more favorable to a tenant?
Those questions involve the meaning of two statutes, ORS 90.510 and ORS 90.727. We discern their meaning based on the words of the statutes in context and, when helpful, legislative history and other interpretive aids. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). Context includes prior versions of the statute, Jones v. General Motors Corp ., 325 Or. 404, 411, 939 P.2d 608 (1997), along with prior common law and the statutory framework within which the law was enacted, City of Salem v. Salisbury , 168 Or. App. 14, 25, 5 P.3d 1131 (2000), rev. den. , 331 Or. 633, 19 P.3d 357 (2001).
*434 To put the statutory construction questions in perspective, we begin with the historical context of the relevant landlord-tenant laws. At the time of the parties' 1992 lease, no Oregon statute addressed the responsibilities of landlord and tenant for trees in a manufactured dwelling park. In 1999, the legislature enacted a statute addressing, for the first time, maintenance of trees in manufactured dwelling parks. Or. Laws 1999, ch. 676, § 3. With that enactment, ORS 90.740 (1999) provided, in part:
"A tenant shall:
"* * * * *
"(4) Except as provided by the rental agreement :
""* * * * *
"(h) Maintain , water, and mow or prune any trees , shrubbery or grass on the rented space[.]"
(Emphases added.) Under that version of the statute, a tenant became responsible for maintenance of "any trees" unless the rental agreement provided otherwise. Id. In 2013, ORS 90.740 was amended to dovetail with a new provision, ORS 90.727, which addressed tree maintenance with more detail. Or. Laws 2013, ch. 443, § 3. As a result of the 2013 amendment, ORS 90.740 now provides that a tenant shall:
"(4) Except as provided by the rental agreement :
""* * * * *
"(h) Maintain, water and mow or prune any shrubbery or grass on the rented space;
"(i) Maintain and water trees , including cleanup and removal of fallen branches and leaves, on the rented space for a manufactured dwelling except for hazard trees as provided in ORS 90.727 [.]"
(Emphases added.)
The new provision, ORS 90.727, imposes on landlords the responsibility for what are deemed "hazard trees." In part, ORS 90.727 provides:
*435 "(3) A landlord:
"(a) Shall maintain a tree that is a hazard tree, that was not planted by the current tenant, on a rented space in a manufactured dwelling park if the landlord knows or should know that the tree is a hazard tree.
"(b) May maintain a tree on the rented space to prevent the tree from becoming a hazard tree, after providing the tenant with reasonable written notice and a reasonable opportunity to maintain the tree.
"(c) Has discretion to decide whether the appropriate maintenance is removal or trimming of the hazard tree.
"(d) Is not responsible for maintaining a tree that is not a hazard tree or for *333 maintaining any tree for aesthetic purposes."
(Emphasis added.) The new provision defines "maintaining a tree" to include felling or removing the tree. ORS 90.727(1). Another provision defines a "hazard tree" to be a tree in a manufactured dwelling park if the tree is eight inches in diameter at four and one half feet above the ground and is found by an arborist to pose an unreasonable risk of causing serious physical injury or damage in the near future. ORS 90.100(20).
In counterpart, ORS 90.727 dictates the tenant's responsibility for trees that are not hazard trees. The statute provides:
"(5) Except as provided in subsection (3) of this section [i.e. , hazard trees], a tenant is responsible for maintaining the trees on the tenant's space in a manufactured dwelling park at the tenant's expense. The tenant may retain an arborist licensed as a landscape construction professional pursuant to ORS 671.560 and certified by the International Society of Arboriculture to inspect a tree on the tenant's rented space at the tenant's expense and if the arborist determines that the tree is a hazard, the tenant may:
"(a) Require the landlord to maintain a tree that is the landlord's responsibility under subsection (3) of this section; or
"(b) Maintain the tree at the tenant's expense, after providing the landlord with reasonable written notice of the proposed maintenance and a copy of the arborist's report."
*436 ORS 90.727 (emphasis added). In this case, the parties do not contend that an arborist had found the fallen tree to be a hazard tree.[5]
When it enacted ORS 90.727 and amended ORS 90.740, the legislature also expressly addressed the timing and operation of the legislation. Those particular provisions were to "become operative January 1, 2014." Or. Laws 2013, ch. 443, § 17. However, the legislature authorized landlords to make unilateral changes to rental agreements before that date, in order to bring rental agreements into compliance with the new requirements. Section 16 of the legislation provides:
"(1) A landlord may unilaterally amend a rental agreement to:
"(a) Comply with requirements in section 5 of this 2013 Act [codified at ORS 90.727 ] and other provisions in the Residential Landlord and Tenant Act regarding the maintenance of trees, including hazard trees; and
""* * * * *
"(2) A landlord may take action under this section before the [January 1, 2014] operative date * * *."
The enactment of that provision concerning "unilateral amendment" occurred in conjunction with a related change to the other statute that is at issue in this case, ORS 90.510(4). That provision addresses unilateral amendment of rental agreements for manufactured dwellings or floating homes generally, and it was expanded to include, among other things, a cross-reference to ORS 90.727. It now provides:
"(4) Every landlord who rents a space for a manufactured dwelling or floating home shall provide a written *437 rental agreement * * *. The agreement must be signed by the landlord and tenant and may not be unilaterally amended by one of the parties to the contract except by :
"(a) Mutual agreement of the parties;
"(b) Actions taken pursuant to ORS 90.530 [pets in facilities], 90.533 [conversion of billing method for garbage collection and disposal], 90.537 [conversion of billing method for utility or service charges], 90.543(3) [utility or service charge billing for large manufactured dwelling parks], 90.600 [increases in rent], *334 90.725 (3)(f) and (7) [landlord access for tree inspection] or 90.727 [maintenance of trees]; or
"(c) Those provisions required by changes in statute or ordinance."
(Emphases added.)
With that background, we proceed to the first question posed above: Is "unilateral amendment" under ORS 90.510(4) a necessary precursor to the application of ORS 90.727 to the parties' relationship? Although phrased differently, we agree with landlord's understanding that "unilateral amendment" is merely a permissible means of bringing a rental agreement into compliance with ORS 90.727, and that ORS 90.510(4) is not itself a limitation on the application of ORS 90.727. There are several reasons for that conclusion.
First, there is nothing generally in ORS 90.510(4) or, for that matter, section 16 of the 2013 legislation, that equates "unilateral amendment" and the application of ORS 90.727. By its terms, ORS 90.510(4) includes a blanket prohibition on unilateral amendment of rental agreements and then provides exceptions to that prohibition. Nothing about the structure of that statute or the nature of the exceptions suggests that statutory permission to amend should be read as an implicit limitation on the application of the listed provisions.
Second, the context suggests the opposite. For instance, paragraph (4)(b) makes specific reference to seven statutes that present circumstances in which a party to an agreement may unilaterally amend the agreement. One of the *438 referenced statutes, ORS 90.533, provides that a "landlord may unilaterally amend a rental agreement to convert the method of billing for garbage collection and disposal" if the landlord gives the tenant "not less than 180 days' written notice before converting [the] billing method." (Emphasis added.) Also, the referenced statute ORS 90.537 provides that a "landlord may unilaterally amend a rental agreement to convert a tenant's existing utility or service billing method" if the landlord gives the tenant not less than 180 days' written notice before converting to a submeter billing method. (Emphasis added.) Similarly, the referenced statute ORS 90.600 allows a landlord to increase the rent in a monthly tenancy if the landlord gives notice in writing to affected tenants at least 90 days prior to the date of the increase. In each of those particular examples, the application of the cross-referenced statutes is constrained by their own terms, not by ORS 90.510(4).
Conversely, one of those cross-referenced statutes, ORS 90.530, does not refer to notice or amendment at all. At subsection (1), ORS 90.530 preserves a tenant's right to keep a pet when a change in rules creates a ban on pets. At subsection (2), ORS 90.530 requires that a rental agreement comply with a proscription against charging a fee based on the tenant's possession of a pet. Although those two subsections were enacted at the same time, subsection (2) applied only to "[a] rental agreement commencing on or after November 1, 1997," whereas subsection (1) contained no such restriction-the implication being that ORS 90.530(1) was applicable regardless of when the rental agreement commenced. Or. Laws 1997, ch. 304, § 2. It is implausible that the legislature would have signaled that type of broad application of the pet statute while, at the same time, implicitly restricting its application through the permissive grant of authority in ORS 90.510(4).
Third, one specific feature of ORS 90.727 and ORS 90.510(4)(b) is conspicuously absent: a negative proscription. Although ORS 90.510(4) permits a unilateral amendment of a rental agreement in those circumstances described by (4)(b), nothing provides that the listed statutes, including the pet statute, ORS 90.530, or the tree statute, ORS 90.727, *439 are inapplicable unless and until there has been a prior unilateral amendment of a rental agreement. That is to say, ORS 90.510(4) does not provide that amendment of a rental agreement is required as a prerequisite in order to make ORS 90.727 generally applicable according to its terms.
Although we agree with landlord on that much, we are not persuaded that the trial court committed reversible error in this case. Our holding turns on the second question identified above: Was ORS 90.727 applicable according to its terms in this case? On disputed *335 evidence, the trial court concluded, "Landlord * * * had a duty to remove the tree and incur the cost." Necessarily, the trial court made that conclusion in the context of tenant's claim for breach of the parties' "tenancy agreement." In other words, the trial court concluded that the parties' lease made the cost of tree removal the landlord's responsibility and that the landlord's imposition of that cost on tenant was a breach of the agreement.
The terms of the lease were before the court, providing that the "leased space shall be landscaped by tenant, and shall be maintained at all times in a neat, clean, and orderly condition." The incorporated rules provided, "Tenants are responsible for maintaining all lawn areas, flowers and shrubbery within their space," and the rules lacked any mention of trees. The trial court could permissibly find those terms to be ambiguous. The landlord's contention that, to keep the leased space "neat, clean, and orderly," requires removal of a fallen or damaged trees, is not the only reasonable reading. To say that a tenant shall "landscape" a rented space does not necessarily encompass responsibility for removal of tall conifers that predated the tenancy. And, to keep a rented space "neat, clean and orderly" might mean removal of fallen leaves and limbs but not require felling, limbing, and bucking Oregon conifers, which may require a logger's chain saw, an industrial wood chipper, or a commercial log truck. To specify in park rules that a tenant shall maintain a lawn, flowers, and shrubbery might reasonably leave responsibility for preexisting trees to the landlord. At the time the parties' words were chosen in the 1992 lease, the 1999 enactment of former ORS 90.740, which required tenants to maintain trees, had not yet occurred. The parties *440 were not choosing those words against the backdrop of a statute to which the parties deferred.
To discern the meaning of ambiguous terms, the trial court could consider extrinsic evidence of the parties' intent. Yogman v. Parrott , 325 Or. 358, 363-64, 937 P.2d 1019 (1997). When looking to extrinsic evidence, the trial court could consider the parties' practical construction as an indication of their intention. Id . at 364, 937 P.2d 1019 ; see also Tarlow v. Arntson , 264 Or. 294, 300, 505 P.2d 338 (1973) (how the parties conducted themselves in relation to the agreement may be instructive). The trial court received testimony from tenant and the former park manager that at the time of the agreement, the landlord considered the trees to be real property, the cost of removal for which the landlord was responsible. After one storm, the landlord had paid $20,000 for the removal of 15 or 16 trees.
On appeal, landlord has not assigned error to the admission of evidence of past conduct as evidence of practical construction of the lease. Nor has landlord assigned error to the sufficiency of the evidence to support the trial court's conclusion that the lease required landlord to pay the cost of removal of fallen trees.[6] Instead, as noted above, landlord argues that by operation of ORS 90.510(4)(c), ORS 90.727 automatically amended the parties' agreement or, alternatively, that the parties' agreement conflicts with ORS 90.727, and cannot be enforced for that reason.
The flaw in landlord's argument is a central assumption that ORS 90.727 overrides the more favorable terms of an existing rental agreement. It does not. As section 16 of the 2013 legislation makes clear, the legislature intended landlords to "comply" with ORS 90.727, and an agreement more favorable to tenants than required by the statute would do so.[7] And, in our review of the legislative history, we found nothing to indicate that the legislative effort to *441 make landlords responsible for hazard trees would roll back the terms of a more generous rental *336 agreement in which a landlord had shouldered responsibility for all trees.
Moreover, such a result would be incongruous with other statutes. Generally, ORS 90.220(1) provides:
"A landlord and a tenant may include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law including rent, term of the agreement and other provisions governing the rights and obligations of the parties."
In effect, ORS 90.220 frees a landlord and tenant to include terms more favorable to the tenant than the statutorily mandated terms. See ORS 90.220(1) (may include terms not prohibited). More specifically, ORS 90.740 provides that a tenant shall,
"(4) Except as provided by the rental agreement :
""* * * * *
"(i) Maintain and water trees, including cleanup and removal of fallen branches and leaves, on the rented space for a manufactured dwelling except for hazard trees as provided in ORS 90.727 [.]"
(Emphasis added.) By reason of those provisions, the parties were at liberty to agree that the tenant is responsible for a lawn, flowers, and shrubbery, while landlord is responsible for removal of fallen trees. Because the trial court concluded that the parties had such an agreement, and because ORS 90.727 does not supersede the terms of a more favorable lease, the trial court ultimately did not err in concluding that the landlord bore responsibility for the fallen and damaged trees. The trial court did not err when, rather than dismissing, the court gave judgment for tenant to recover his costs of removal of the trees.[8]
*442 In his third assignment of error, landlord contends that the trial court erred to the extent that the court's award to tenant of attorney fees included $7,380 in attorney fees and $875 in costs in court-annexed arbitration. Landlord contends that the trial court lacked authority to award such fees and costs because the arbitrator had not awarded such sums and tenant had not appealed to the circuit court under ORS 36.425(6) to contest the arbitrator's failure to have awarded attorney fees and costs. We disagree.
Tenant was entitled to recover attorney fees in this action based upon the attorney fee provision in the parties' lease. It reads:
"If suit or action is instituted in connection with any controversy arising out of this lease, the prevailing party shall be entitled to recover, in addition to costs, such sum as the court may adjudge reasonable as attorney fees, including attorney fees on appeal."
In his letter ruling, the arbitrator indicated that tenant should recover attorney fees. The arbitrator wrote:
"This is a suit that should never have been necessary. Therefore, I believe that an award of attorney's fees to [tenant] including all costs included in the proceedings is justified."
Before determining the amount of costs and attorney fees, the arbitrator filed an award on tenant's claim, and landlord filed a notice of appeal de novo as to "all issues of law and fact" under ORS 36.425(2)(a).
After prevailing at trial in court, tenant petitioned for an award of costs and attorney fees for all prior judicial proceedings. Landlord objected to the inclusion of $7,380 in attorney fees and $875 in costs before the arbitrator. Landlord argued that, because UTCR 13.210(2) provides that the arbitrator shall determine costs and attorney fees in arbitration but did not do so, the circuit court lacked authority to do so.[9] The circuit court *337 found the argument *443 unpersuasive. The circuit court gave supplemental judgment for tenant's costs and attorney fees of $33,847.
On appeal, landlord reiterates its argument, adding that tenant should have appealed the arbitrator's failure to award costs and attorney fees under ORS 36.425(6).[10] We, too, find the arguments unpersuasive. It is true that UTCR 13.210(2) provides that an arbitrator shall award costs and attorney fees incurred in arbitration where allowed by law, but that authority does not carry a necessary implication that the circuit court lacks authority to award fees incurred in arbitration. It is also true that ORS 36.425(6) permits an aggrieved party to appeal from the award or denial of attorney fees, but that is only one of two alternative tracks by which parties may choose to appeal from an arbitration decision. Lee v. American Family Mutual Ins. Co. , 279 Or. App. 282, 286, 379 P.3d 698 (2016). The other track is what was pursued here.
As it happened, landlord filed a notice of appeal de novo from all issues of law or fact under ORS 36.425 (2)(a).[11] The reasons that the arbitrator had not yet determined a sum of costs and attorney fees was because landlord had quickly filed a notice of appeal for trial de novo on all issues, and because tenant did not thereafter petition the arbitrator for costs and attorney fees. However, tenant was not required to initiate an appeal under ORS 36.425(6) in order to preserve his right to recover attorney fees and costs. That is so because landlord's appeal under ORS 36.425(2)(a) initiated a trial de novo on all issues of law and fact, including tenant's entitlement to recover costs and attorney fees.
When, after trial de novo , tenant petitioned for costs and attorney fees, the circuit court had authority to *444 award costs and attorney fees according to the attorney fee provision of the parties' lease, the procedure provided by ORCP 68, and the standards described in ORS 20.075. The happenstance that the arbitrator had not yet awarded fees at the time of landlord's appeal did not serve to limit the trial court's authority to award costs and attorney fees for all prior proceedings. Tenant's attorney fees incurred in court-annexed arbitration-a judicial proceeding-are just as recoverable as those incurred in the circuit court. See Robinson v. Tri-Met , 277 Or. App. 60, 62 n. 3, 370 P.3d 864 (2016), rev. den. , 361 Or. 886, 403 P.3d 763 (2017) ("As a judicial proceeding, plaintiff's attorney fees may still be recoverable under ORS 742.061 in court-annexed arbitration."); see also Douglass v. Allstate Ins. Co. , 152 Or. App. 216, 222, 953 P.2d 770, rev. den. , 327 Or. 305, 966 P.2d 219 (1998) (attorney fees awarded in circuit court for court-annexed arbitration). Thus, the trial court did not err in entering a supplemental judgment for tenant in the sum of $33,847.
Affirmed.

In its first assignment, landlord asserts that the trial court erred in denying its motion for summary judgment, which had sought dismissal of tenant's action as a matter of law. In most cases, the denial of summary judgment is not reviewable on appeal after trial. See, e.g. , Heidtke v. Int'l Brotherhood of Boilermakers , 104 Or. App. 473, 475-76, 801 P.2d 899 (1990) (denying review); see also Mt. Fir Lumber Co. v. Temple Dist. Co. , 70 Or. App. 192, 198, 688 P.2d 1378 (1984) (same). In some cases, such denial is reviewable if the motion rests on "purely legal contentions" that do not require the establishment of any predicate facts. York v. Bailey , 159 Or. App. 341, 345, 976 P.2d 1181, rev. den., 329 Or. 287, 994 P.2d 122 (1999) (reciting exception to rule); Seidel v. Time Ins. Co. , 157 Or. App. 556, 560, 970 P.2d 255 (1998) (same). In this case, there was a dispute of fact, such that the trial court's denial of landlord's motion for summary judgment on that basis cannot be reviewed on purely legal contentions. The trial court determined that there was a factual dispute whether and when landlord conveyed a "unilateral amendment" to the lease under ORS 90.510(4), a statute that we recite later. We determine that there was a factual dispute involving extrinsic evidence of the parties' intent whether the lease obligated landlord to pay costs of tree removal. We recite that evidence later.

Over objections, tenant offered the testimony about past practice as evidence of intent for interpreting the language of the parties' agreement. Admission of that testimony has not been assigned as error.

The parties disputed whether Evans hand-delivered the letter to tenant on February 9 or, instead, tenant only received it in the mail later after he had paid for the tree removal. Acting as factfinder, the trial court found that notice and amendment of the lease did not occur before removal of the subject trees. Landlord has not assigned error to the sufficiency of the evidence supporting that finding.

We have some doubt that the trial court interpreted ORS 90.510(4) to require a unilateral amendment to a rental agreement before ORS 90.727 could have any effect whatsoever on a landlord-tenant relationship. The court's ruling may be read as a rejection of landlord's particular proposition that unilateral amendments pursuant to ORS 90.510(4)(c) occur automatically, with no action by the parties, rather than a broader ruling that a unilateral amendment pursuant to ORS 90.510(4) was a necessary prerequisite to ORS 90.727 having any effect on the parties. However, on appeal, tenant has not seriously disputed landlord's characterization of the scope of the trial court's ruling. Therefore, we address the question whether, as a general matter, a unilateral amendment under ORS 90.510(4) was necessary before ORS 90.727 could have any effect on the landlord-tenant relationship.

Landlord's argument that it is not responsible for the trees turns on the fact that tenant never retained an arborist to opine that the fallen trees were hazard trees. That is, landlord contends that, even if it was responsible for the removal of fallen trees under the parties' rental agreement, ORS 90.727 relieved it of that obligation where, as here, the tenant did not retain an arborist to opine that the fallen trees are hazards. Tenant responds that, under the preexisting rental agreement, landlord was responsible for removing fallen trees, and tenant was not required to comply with the ORS 90.727 procedures for retaining an arborist in order to enforce landlord's tree removal obligation under the agreement.

Landlord disputed the admission of such testimony and the meaning of the lease at trial.

To the extent that landlord suggests that the rental agreement was somehow "unilaterally amended" pursuant to ORS 90.510(4)(c) (referring to "those provisions required by changes in statute or ordinance"), we reject that argument. Because the more favorable agreement already complied with ORS 90.727, no changes to that agreement were "required" by the statutory changes.

As noted, ORS 90.510(4)(b) permits a unilateral amendment of a rental agreement in specific situations. Where, however, the parties have a rental agreement more favorable to the tenant than the minimum terms of the statutes, as discussed below, mutually agreed amendments would necessarily be required to modify what was an existing, more favorable agreement. See generally ORS 90.220 ; ORS 90.740 (permitting mutual agreements to adopt or modify terms more favorable than those required). Landlord did not contend that the parties had modified the lease with a mutually agreed amendment.

UTCR 13.210(2) provides:
"The arbitrator shall determine all issues raised by the pleadings, including a determination of any damages, costs, and attorney fees where allowed under applicable law."

In relevant part, ORS 36.425(6) provides that within seven days of an arbitration decision,
"a party may file with the court and serve on the other parties to the arbitration written exceptions directed solely to the award or denial of attorney fees or costs."

In relevant part, ORS 36.425(2)(a) provides that within 20 days of the arbitration decision,
"a party against whom relief is granted by the decision and award * * * may file with the clerk a written notice of appeal and request for a trial de novo of the action in the court on all issues of law and fact."