Argued and submitted November 7, complaint dismissed December 26, 2003

# In re Complaint as to the Conduct of
# SALLY R. LEISURE,
*Accused.*
# (OSB 00-89; SC S50203)

82 P3d 144

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the briefs for the Oregon State Bar.

Sally R. Leisure, Portland, argued the cause and filed the brief for herself.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that the accused violated a number of disciplinary rules and statutes by (1) practicing law while suspended from the practice of law for failure to pay an installment due on her annual Professional Liability Fund (PLF) assessment; (2) representing to clients, courts, and opposing counsel, at a time that she was suspended, that she was qualified to practice law; and (3) falsely representing, in her application for reinstatement to the Bar, that she had not practiced law during her suspension. A trial panel of the Disciplinary Board found that the accused had committed all the violations charged in the complaint and imposed a 30-day suspension for those violations. The Bar sought review, arguing that the sanction that the trial panel selected was too lenient. The accused asserts that she is not guilty of any of the charges. On *de novo* review, ORS 9.536(3), we conclude that the Bar has failed to establish, by the requisite clear and convincing evidence, BR 5.2, that the accused committed the alleged violations. Accordingly, we dismiss the Bar's complaint.

The facts are not in dispute. In 1999, the accused was working as a sole practitioner with a focus on debtor-creditor law. As an active member of the Bar engaged in the private practice of law in Oregon, the accused was required to carry professional liability insurance, which the Bar provides through the PLF. ORS 9.080(2); Oregon State Bar Bylaws §§ 15.1 and 15.2. Like other members of the Bar, the accused received annual assessments from the PLF for the required professional liability coverage.

When the accused received her 1999 PLF assessment, she decided to pay the assessment in quarterly installments, as provided for by the assessment form. That payment option required the accused to sign an "Installment Payment Request" that included the following statement:

"In consideration of being permitted to pay my 1999 Professional Liability Fund assessment * * * on an installment basis, I agree to the following:

"(1)   [setting out payment schedule and service charge];

"(2)   By electing this installment payment plan, I agree that neither the PLF nor the Executive Director of the Oregon State Bar will be required to send any further notices, billings, or notices of delinquency in connection with any future installments (including any such notices which might otherwise be required under ORS 9.200(1)) *and I hereby waive my right to such notices or billings.* I further agree that upon my failure to pay any installment or other payment when due, the PLF is authorized to forward my name to the Executive Director of the Oregon State Bar for immediate suspension of my membership in the Bar and said suspension will remain in effect until all unpaid assessments and late charges are paid in full."

(Emphasis in original.)

The accused signed the form and paid the first two quarterly installments on her 1999 assessment in, respectively, January and April. The third installment was due, at the latest, at 5:00 p.m. on July 12. On June 9, and again on July 1, the PLF sent the accused a letter stating that the payment was due and that the accused's Bar membership would be suspended automatically with no further notice if she did not pay by July 12.

On July 8, 1999, the accused wrote a check for $475 to cover her July PLF installment. On July 16, a Friday, the accused's bank dishonored the check for insufficient funds. On July 19, pursuant to the "Installment Payment Request," the PLF caused the accused to be suspended from membership in the Bar, effective July 13. On that same day, the PLF sent a certified letter to the accused, notifying her of the suspension. Also on July 19, at 2:15 p.m., a PLF employee telephoned the accused and notified her of the suspension.

During the week that followed, the accused engaged in activities that the accused acknowledges amounted to the practice of law: She participated in settlement negotiations on behalf of a client; filed papers and pleadings in court; and met with and advised clients. At the end of the week, on July 23, 1999, the accused submitted $950 (which represented the accelerated balance of her PLF assessments for the year) to the Bar. On the same day, she submitted an application for

reinstatement to the Bar, along with a $75 reinstatement fee. As part of the reinstatement application, the accused was required to, and did, sign an affidavit that contained the following statement: "I did not engage in the practice of law except where authorized to do so during the period of my suspension."

Shortly thereafter, the Bar learned that the accused had filed a motion in a bankruptcy proceeding on July 22, 1999. The Bar began an investigation and found other evidence that the accused had practiced law between July 13 and July 23.

The Bar ultimately filed the present complaint, alleging that the accused (1) had practiced law unlawfully during her suspension; (2) had misrepresented her Bar status to her clients, courts, and opposing counsel, by failing to advise them of her suspension; and (3) had stated falsely under oath that she had not practiced law during the period of her suspension. The Bar asserted that, by doing so, the accused had violated a number of disciplinary rules and statutes: Disciplinary Rule (DR) 3-101(B) (unlawful practice of law);[1] ORS 9.160 (practice of law by person who is not active member of Bar);[2] DR 1-102(A)(3) (dishonesty, misrepresentation, fraud, or deceit);[3] and ORS 9.527(1) (engaging in act that would be grounds for denying admission to Bar).[4]

---

[1] DR 3-101(B) provides:

"A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

[2] ORS 9.160 provides:

"Except for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent that person as qualified to practice law unless that person is an active member of the Oregon State Bar."

[3] DR 1-102(A) provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[4] ORS 9.527 provides, in part:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

As noted, a trial panel was appointed and heard arguments and evidence in the matter. Ultimately, the trial panel found that the Bar had proved all the charges and that the appropriate sanction was a 30-day suspension.

The Bar seeks review of only the trial panel's sanction recommendation. It argues that a 30-day suspension is an insufficient sanction for the conduct at issue and that, to be consistent with past cases that involved similar conduct, a suspension of at least one year is required. The accused responds that a one-year suspension would be excessive and that, in any event, she did not commit any of the charged violations because the suspension that is at the heart of all charges was unlawful and void.

■ We first consider whether the Bar has established that the accused violated any or all of the disciplinary rules and statutes that the Bar has charged her with violating. The validity of the suspension is an issue that is central to all the charges. As noted, the accused contends that the purported suspension was unlawful.

The accused relies on ORS 9.200(1), which provides:

"Any member [of the Bar] in default in payment of membership fees established under ORS 9.191(1) for a period of 90 days, or any person in default in payment of membership fees established under ORS 9.191(2) for a period of 30 days after admission or as otherwise provided by the board, *or any member in default in payment of assessed contributions to a professional liability fund under ORS 9.080(2) for a period of 30 days, shall, after 60 days' written notice of the delinquency, be suspended from membership in the bar.* The notice of delinquency shall be sent by the executive director, by registered or certified mail, to the member in default at the last-known post-office address of the member. Failure to pay the fees or contributions within 60 days after the date of the deposit of the notice in the post office shall automatically suspend the delinquent member. * * *."

(Emphasis added.) The accused notes that ORS 9.200(1) sets out in precise terms the legislatively authorized procedure

---

"(1) The member has committed an act or carried on a course of conduct of such nature that, if the member were applying for admission to the bar, the application should be denied[.]"

and timetable for suspending Bar members who default on their PLF assessments. Specifically, a member will be suspended for defaulting on a PLF assessment if (1) he or she has been in default for a period of 30 days; and (2) the PLF has given written notice to the lawyer of the default and 60 days have elapsed since the Bar sent that notice. The accused notes that the Bar suspended her immediately, and without notice, upon her default. She concludes that her suspension violated the statute and is void.

The Bar responds that the accused expressly waived the requirements of ORS 9.200(1) when she signed the aforementioned "Installment Payment Request" form.[5] However, the accused contends that the purported waiver is problematic in a number of respects.

The accused argues, first, that the waiver that she signed speaks to only the notice required by ORS 9.200(1) and does not address, by direct reference or otherwise, the 30-day default period set out in that statute. Thus, the accused argues, even if the waiver were valid and enforceable, it had no effect on the statutory requirement that the Bar wait 30 days after the default before suspending her. The accused also argues that the purported waiver was and is unenforceable, because it is contrary to the legislative policies expressed in ORS 9.200(1).

Finally, the accused argues that her waiver is and was ineffective because it arose out of a policy change (of requiring such waivers) that neither the PLF Board of Directors, nor the Bar Board of Governors (BOG), nor this court ever adopted. The accused argues that the waiver requirement significantly changes the terms and conditions under which law may be practiced in Oregon and is ineffective unless formally adopted by the appropriate governing bodies.

We first consider the words of the purported waiver and the contention that it did not address or affect the statutory 30-day default period. There is no question that the

---

[5] The Bar also argues that, whether or not the accused received the *statutory* notice, she received fair warning that she would be suspended immediately if she failed to pay a PLF installment in a timely fashion. That appeal to general "fairness" is beside the point: The Bar's suspension of the accused either was authorized by law or it was not.

accused expressly waived the 60-day notice requirement by agreeing that

> "neither the PLF nor the Executive Director of the Oregon State Bar will be required to send any further notices, billings, or notices of delinquency in connection with any future installments *(including any such notices which might otherwise be required under ORS 9.200(1)) and I hearby waive my right to such notices or billings*."

(Emphasis added.) It is equally clear that that sentence does not mention, and therefore does not waive, the statutory 30-day default period.

There is some suggestion that the accused waived the 30-day default period in the sentence that follows:

> "I further agree that upon my failure to pay any installment or other payment when due, the PLF is authorized to forward my name to the Executive Director of the Oregon State Bar for immediate suspension of my membership in the Bar."

However, it is not clear to this court that that sentence encompasses such a waiver, as discussed below.

One might argue that the reference in the sentence to *immediate* suspension clearly is at odds with, and necessarily waives, any default period that ORS 9.200(1) provides. However, the precise words of the purported waiver—that, "upon my failure to pay any installment * * * when due, the PLF is authorized to *forward my name to the Executive Director of the Oregon State Bar* for immediate suspension"—may or may not convey consent to immediate suspension upon default. Certainly, the words are read most naturally as being primarily directed to the PLF's intention to forward names to the Bar, rather than to controlling the Bar's actions thereafter. That is particularly so in light of the fact that the PLF is party to the agreement, but the Bar is not.

Moreover, the sentence contains no express reference to, or waiver of, the 30-day default period set out in ORS 9.200(1). That fact is striking, if only because the preceding sentence expressly identifies, as waived, "any such notices which might otherwise be required under ORS 9.200(1)." Indeed, given that the waiver in the first sentence explicitly

refers to the notice provisions of ORS 9.200(1), the absence of any explicit reference to the default period provided in the same statute tends to support an inference that the waiver does not extend to that aspect of the statute.

Ultimately, we are not persuaded that the "Installment Payment Request" conveys a waiver of the 30-day default period set out in ORS 9.200(1). It follows that the accused did not waive the statutory default period by signing the agreement. By suspending the accused immediately upon her default, the Bar violated that statutory requirement. As such, the suspension was invalid and void.

The foregoing conclusion disposes of this case, but it does not communicate fully to the PLF or to the Bar additional information that we think those two bodies deserve to have respecting this court's view of their authority to require lawyers who pay their PLF assessment in installments to waive the default period provided set out in ORS 9.200(1).

The Bar relies on the general rule stated in *Turney v. J.H. Tillman Co.*, 112 Or 122, 132, 228 P 933 (1924), that a person may waive by agreement the benefit of a statutory provision unless doing so would violate the public policy expressed in the statute. The Bar asserts that ORS chapter 9 expresses no "overpowering" public policy that would be violated by an agreement to waive the 60-day notice and 30-day default period requirements of ORS 9.200(1).

The Bar does not attempt, in the course of that argument, to characterize the public policy that inheres in ORS 9.200(1) (or, more generally, in ORS chapter 9). It merely complains that the accused has failed to identify any public policy expressed in ORS chapter 9 that is sufficiently important to "overpower" the PLF's authority to create, and set the terms for, an installment plan for paying PLF assessments. The Bar's approach (if we understand it correctly) is conceptually incorrect for the reasons that follow.

■ The accused's rights to notice and a default period, which the Bar asserts that the accused waived, are statutory. For purposes of determining whether a statutory provision may be waived by agreement, the relevant consideration is

whether the statute is designed, in some respect, for the public good, rather than being directed solely to the protection of individual rights. Thus, in *School Dist. No. 1 v. Teachers' Retirement Fund*, 163 Or 103, 95 P2d 720 (1939), this court voided, as unenforceable, a contractual provision in certain teachers' contracts that purported to waive any claims to disability benefits for any illnesses arising out of pre-existing physical impairments. This court noted that the waiver was in conflict with an Oregon statute that provides for a disability annuity for teachers and that that statute was enacted for the public good (providing for the retirement of teachers). *Id.* at 106-13. We think that the message of the *School Dist. No. 1* decision is clear: Statutory rights may be waived, but only to the extent that they serve no broader public policy but are directed solely to the protection of the individual who purports to waive them.[6]

We now turn to the statutory right at issue, *viz.*, the lawyer's right under ORS 9.200(1) to a 30-day default period and 60 days' notice before being suspended for failure to make a PLF payment. The Bar suggests that that is a right that may be waived by agreement, presumably on the theory that it exists only for the protection of the individual lawyer. Although it is clear that the notice and default period provisions of ORS 9.200(1) are designed, at least in part, to protect the individual lawyer (by ensuring that the lawyer has sufficient notice of an impending suspension and time to repair any default), it also is clear that permitting those provisions to be set aside by agreement would violate a legislative policy that is concerned more broadly with the public good. More specifically, ORS 9.200(1) strictly controls the manner of Bar suspensions for default on membership dues or PLF assessments, to ensure that the suspension process is orderly and that the Bar does not overstep its authority. That policy reflects a concern for the chaos that might result from unexpected and precipitous suspensions, not just for the

---

[6] To the same general effect, see *Rose v. Etling*, 255 Or 395, 397, 467 P2d 633 (1970) (party to retail installment sales contract cannot waive benefit of venue statute in any cause of action arising out of the contract, because such waiver would be against public policy); *Martin v. Ore Insurance Co.*, 232 Or 197, 206, 375 P2d 75 (1962) (stating general rule that party to contract cannot waive benefits of law that seeks to protect public as well as the individual).

suspended lawyer but for courts, opposing counsel, and, particularly, for clients. Unnoticed, eleventh-hour suspensions create a likelihood that clients will be left without counsel at critical moments in pending cases. The legislature's decision to specify notice and default period requirements for administrative suspensions authorized by ORS 9.200(1) is, in our view, a clear recognition of that concern.

Based on the foregoing, we hold that the notice and default period requirements of ORS 9.200(1) are designed, at least in part, for the public good. They cannot be waived by agreement. It follows that, in the present case, any waiver of those statutory requirements by the accused would have been ineffective and that the suspension itself also would have been without effect, because the Bar failed to abide by the statutory notice and default period requirements. And, because the suspension would have been void, it could not have served as the basis for the Bar's contention that the accused violated DR 3-101(B) and ORS 9.160 by practicing law while suspended. Neither could it have supported the Bar's claim that the accused violated DR 1-102(A)(3) or ORS 9.527(1) by falsely representing to courts, clients, and opposing counsel, during a period of suspension, that she was qualified to practice law.

Finally, we note that the ineffectiveness of the purported suspension of the accused also disposes of the Bar's claim that the accused violated DR 1-102(A)(3) and ORS 9.527(1) by falsely stating, in her application for reinstatement, that she had not practiced law during the period of her suspension. Because the suspension was void, the accused had retained her right to practice law throughout the relevant period. Therefore, the accused's statement—"I did not engage in the practice of law except where authorized to do so during the period of suspension"—was not false.[7]

For the reasons stated, we conclude that the Bar has failed to carry its burden of establishing, by clear and

---

[7] Our holding in this case should not be construed as in any way condoning the accused's lack of candor. We hold only that, in the peculiar procedural posture of this proceeding, the accused is not subject to sanction.

convincing evidence, that the accused violated any disciplinary rule or statute.

The complaint is dismissed.