Argued and submitted February 14, 2020, affirmed January 6, 2021

Janelle STANTON,
Conservator for Janice Hoglan,
*Plaintiff-Appellant,*

*v.*

Vickie MEDELLIN,
AND ALL OCCUPANTS,
*Defendant-Respondent.*

Polk County Circuit Court
18LT10713; A169557

481 P3d 1004

In this action for forcible entry and detainer arising from a residential tenancy, plaintiff landlord appeals a general judgment in favor of defendant tenant and a supplemental judgment awarding fees, costs, and disbursements to defendant. The rental agreement at issue in this case contained a provision purporting to prohibit the plaintiff's ability to terminate the tenancy for reasons that the plaintiff would otherwise be entitled to do so under the Oregon Residential Landlord and Tenant Act (the ORLTA). Plaintiff contends that the trial court erred when it determined that that provision was enforceable because (1) the provision was not allowed under the ORLTA and (2) the provision violated public policy. *Held*: Neither the ORLTA nor public policy prohibited plaintiff from bargaining away plaintiff's ability to terminate the tenancy for reasons otherwise allowed under the ORLTA.

Affirmed.

Norman R. Hill, Judge.

Matthew G. Shepard argued the cause and filed the brief for appellant.

Alexander Spalding filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Affirmed.

## TOOKEY, J.

In this action for forcible entry and detainer (FED) arising from a residential tenancy, plaintiff landlord appeals a general judgment in favor of defendant tenant. Additionally, plaintiff appeals a supplemental judgment awarding fees, costs, and disbursements to defendant.[1]

With respect to appeal of the general judgment, plaintiff asserts that the trial court erred when it determined that plaintiff "had no right to terminate [the tenancy] without cause pursuant to ORS 90.427 [(2017), *amended by* Or Laws 2019, ch 1, § 1; Or Laws 2019, ch 641, § 5] and in ruling that a landlord can prospectively waive its right to terminate [a] month-to-month tenancy except for nonpayment of rent by the terms of a rental agreement." Defendant responds that the trial court "correctly found that [a] rental agreement provision allowing the tenant to only be removed for non-payment of rent (thereby limiting the landlord from filing a 'no cause' ORS 90.427(3) eviction) was enforceable."

With respect to the appeal of the supplemental judgment, as we understand plaintiff's argument, plaintiff asserts that the trial court erred in awarding fees, costs, and disbursements to defendant, because the trial court erred when it ruled that plaintiff was not entitled to prevail in the FED action.

For the reasons that follow, we conclude that the trial court did not err, and we affirm the general judgment and supplemental judgment.

At the outset, however, we pause to note that ORS 90.427(3)(c) (2017), which was in effect at the time of the trial court's decision, allowed for "no-cause" evictions, even after

---

[1] The rental agreement in this case was entered into by Janice Hoglan, as a landlord, and defendant, as a tenant.

We note that various parties have been the "plaintiff" in this case at various stages of this litigation, including Hoglan's conservator, Hoglan's successor conservator, and the personal representative of Hoglan's estate. In this opinion, we refer to all such parties as "plaintiff."

We assume, for the purposes of this opinion, that each of those plaintiffs stepped into Hoglan's shoes with regard to the rental agreement at issue and was bound by the rental agreement and ORS chapter 90, the Oregon Residential Landlord Tenant Act.

the first year of occupancy. It provided that, with regard to month-to-month tenancies, "At any time after the first year of occupancy, the landlord may terminate the tenancy by giving the tenant notice in writing not less than 60 days prior to the date designated in the notice for the termination of the tenancy."

ORS chapter 90, the Oregon Residential Landlord and Tenant Act (the ORLTA), including ORS 90.427, was amended extensively during the 2019 legislative session, culminating in the legislature's enactment of Senate Bill (SB) 608 (2019), which, in most cases, "prohibits no-cause evictions for tenants who have lived in their homes for at least a year." Testimony, Senate Committee on Housing, SB 608, Feb 4, 2019, Ex 7 (statement of Senate Majority Leader Ginny Burdick). The current version of ORS 90.427(3) provides that, after the first year of occupancy, with some minor exceptions, a landlord may terminate a month-to-month tenancy only for a "tenant cause" or for a "qualifying landlord reason for termination."

The limitation on no-cause terminations of month-to-month tenancies created by passage SB 608 applies to "[t]erminations of month-to-month tenancies occurring on or after" March 30, 2019. *Rider v. Carranza*, 306 Or App 616, 620, 475 P3d 467 (2020). In this case, as explained below, the termination notice plaintiff sent to defendant purported to terminate the tenancy on July 17, 2018, which is prior to the effective date of SB 608.

On appeal, neither party contends either that the provisions of SB 608 related to no-cause evictions obviate the need for us to consider the parties' arguments on appeal or that the provisions of SB 608 are controlling with respect to this appeal.

Our opinion in this case analyzes the parties' arguments under the ORLTA as it existed prior to passage of SB 608; that is, under the ORLTA as it existed at the time that plaintiff purported to terminate defendant's tenancy. All references to statutes in ORS chapter 90 in this opinion are to those in effect at that time, unless otherwise noted.

## I.  FACTS & PROCEDURAL HISTORY

In 1995, Janice Hoglan, as a landlord, and defendant, as a tenant, entered into a written rental agreement under which defendant would rent a mobile home situated on a piece of land in Amity, Oregon. Hoglan and defendant became close friends. In 2014, they entered into a subsequent rental agreement, after Hoglan approached defendant about entering a new agreement to "make sure everyone knew what [Hoglan's] wishes were."

The 2014 rental agreement provided for monthly rent at a set amount and prohibited defendant from subletting without written consent.

The rental agreement also contained various provisions imposing obligations on defendant. For example, Clause 11 of the agreement provided that defendant had various maintenance responsibilities and was obligated to reimburse the landlord for certain costs, and Clause 13 prohibited defendant and defendant's guests from engaging in certain activities on the premises.[2]

The rental agreement also contained two clauses concerning termination of the rental agreement. Clause 22 of the rental agreement, titled "additional provisions," purported to restrict Hoglan's ability to terminate defendant's tenancy for reasons other than failure to pay rent. That clause provided:

---

[2]  Clause 11 provided, in part:

"Tenant will: (1) keep the premises clean, sanitary, and in good condition and, upon termination of the tenancy, return the premises to Landlord in a condition identical to that which existed when Tenant took occupancy, except for ordinary wear and tear; (2) immediately notify Landlord of any defects or dangerous conditions in and about the premises of which Tenant becomes aware; (3) reimburse Landlord, on demand by Landlord, for the cost of any repairs to the premises damaged by Tenant or Tenant's guests or business invitees through misuse or neglect."

Clause 13 provided, in part:

"Tenant and guests or invitees will not use the premises or adjacent areas in such a ways as to: (1) violate any law or ordinance ***; (2) commit waste (severe property damage); or (3) create a nuisance by annoying, disturbing, inconveniencing, or interfering with the quiet enjoyment and peace and quiet of any other tenant or nearby resident."

"[Defendant] may continue to live at this property at this rent for as long as she choose[s]. She can't be removed for other than failure to pay rent."

Additionally, Clause 24, titled "grounds for termination of tenancy," provided that "failure of Tenant or Tenant's guests or invitees to comply with any term of this Agreement, or the misrepresentation of any material fact on Tenant's rental application, is grounds for termination of the tenancy, with appropriate notice to tenants and procedures as required by law."

In 2017 plaintiff was named as Hoglan's conservator, and, on May 11, 2018, plaintiff issued a 60-day termination notice pursuant to ORS 90.427 purporting to terminate defendant's tenancy on July 17, 2018, without a stated cause.

Ultimately, plaintiff filed a FED complaint seeking possession of the premises.

Plaintiff argued that the tenancy at issue is a month-to-month tenancy; the ORLTA provides a statutory right for a landlord to terminate such a tenancy upon 60 days' notice as provided in ORS 90.427; the landlord cannot waive that right because it serves the "broader public policy of having a uniform statutory regulation of the landlord tenant law within the State of Oregon"; and that giving effect to Clause 22 of the rental agreement would prohibit eviction even if defendant "intentionally inflicts substantial damage to the property."

In response, defendant acknowledged that the tenancy was a month-to-month tenancy, but argued that in Clause 22 of the rental agreement plaintiff "bargained away her right to terminate the lease without cause, or indeed for any cause other than failure to pay rent." Defendant took the position Clause 22 was valid and enforceable, as, in her view, ORS 90.220(1) allows parties to a rental agreement to include any terms and conditions in a rental agreement that are not prohibited by law.

The trial court ruled in favor of defendant, determining that the "landlord has not met their burden." The

trial court noted that, reading Clause 22 and Clause 24 together, "to give effect to the intent of the parties, * * * the right to terminate this [rental agreement] resides in the tenant," and noted that plaintiff did not point the court to "anything in the Landlord-Tenant Act that says that a landlord cannot enter into that agreement." The trial court also noted during plaintiff's closing argument that it is "not really accurate to say that [defendant] could tear the place up or do anything like that because that would violate Clause 24."

Following the trial court's ruling, the parties sought clarification of the ruling with regard to the "interaction between Clause 22 and 24" and asked the trial court to provide "additional insight." The trial court responded that the action is a "landlord-tenant action," and it is "either a 'yes' or a 'no,'" and that it "found 'no.'"

On appeal, both parties primarily take the position that the effect of Clause 22 of the rental agreement was to prohibit termination of defendant's tenancy for any reason other than nonpayment of rent.

Although the exact contours of the trial court's construction of Clause 22 when interpreted in conjunction with Clause 24 is not precisely clear, at bottom, we understand the trial court to have concluded that the effect of Clause 22 and Clause 24 is to limit plaintiff's ability to terminate the rental agreement for reasons that plaintiff would otherwise be entitled to do so under the ORLTA.

After its ruling, the trial court issued a general judgment in favor of defendant, and a supplemental judgment awarding fees, costs, and disbursements to defendant.

## II.   ARGUMENTS ON APPEAL

On appeal, plaintiff contends that the trial court erred. Plaintiff argues that the ORLTA "only permits three types of tenancies" and that a "month-to-month tenancy," such as the one in this case, "is always terminable by the landlord or the tenant, as provided in the ORLTA, notwithstanding any language in the rental agreement to the contrary."

Plaintiff also argues that "a landlord's right to terminate a month-to-month rental agreement is a statutory right that cannot be waived." That is so, in plaintiff's view, because "that right was granted to landlords by the legislature, at least in part for the public good." Therefore, according to plaintiff, any "purported waiver must be ignored as against public policy and therefore void and unenforceable."

Defendant, for her part, contends that the ORLTA "confers upon a landlord and tenant an absolute contractual right to include different terms than those in the ORLTA—so long as such terms are not 'prohibited.'" In defendant's view, there is no prohibition on a landlord contracting away the landlord's ability to terminate a rental agreement. Defendant also contends that there is no "public policy" prohibition that prevents a landlord from waiving a right or contractually altering eviction options, and that the "public good" is not "implicated in the rental agreement provision at issue in this case."

## III. ANALYSIS

In analyzing the parties' arguments, we first turn to whether the ORLTA permits a landlord and tenant to enter a rental agreement such as the one in this case, which provided that the tenant "may continue to live at th[e] property *** for as long as she choose[s]" and "can't be removed for other than failure to pay rent." That is, under the ORLTA, whether a landlord is permitted to limit their ability to terminate a rental agreement for reasons that the landlord would otherwise be entitled to terminate the rental agreement under the ORLTA. That presents a question of statutory interpretation, which we review for legal error.[3] *Rider*, 306 Or App at 618.

We have previously observed that the "purpose" of ORS chapter 90, the ORLTA, is to "protect the public."

---

[3] We note that, even if the agreement at issue violated the ORLTA, whether the agreement was unenforceable for that reason presents a separate question. *Mayfly Group, Inc. v. Ruiz*, 208 Or App 219, 222, 144 P3d 1025 (2006), *rev den*, 342 Or 344 (2007) ("When, however, the alleged illegality [of a contractual provision] is based on the violation of a statute, the question of the contract's enforceability is one of legislative intent."). Nevertheless, given plaintiff's arguments on appeal, a necessary first step is determining whether the agreement at issue in fact violated the ORLTA.

*LeBrun v. Cal-Am Properties, Inc.*, 197 Or App 177, 183-84, 106 P3d 647, *rev den*, 338 Or 488 (2005) (internal quotation marks omitted). The ORLTA, "applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state." ORS 90.115. Importantly, ORS 90.220(1) provides, "A landlord and a tenant may include in a rental agreement terms and conditions not prohibited by [ORS chapter 90] or other rule of law including rent, term of the agreement and other provisions governing the rights and obligations of the parties."

Plaintiff contends that ORS 90.220(1) "simply allows for landlords and tenants to contract for particular terms (*e.g.*, amount of rent, or the length of term), which are not in contradiction of the rights and remedies already 'determined' by the ORLTA." That interpretation is contrary to precedent. As we explained in *Morat v. Sunset Village, LLC*, 294 Or App 427, 441, 432 P3d 327 (2018), "[i]n effect, ORS 90.220 frees a landlord and tenant to include terms more favorable to the tenant than the statutorily mandated terms."

We note that certain terms and conditions in rental agreements are expressly prohibited by the ORLTA. For example, ORS 90.245(1) provides that a "rental agreement may not provide that the tenant" agrees "to waive or forgo rights or remedies under" ORS chapter 90; ORS 90.250 provides that a "rental agreement *** may not permit the receipt of rent free of the obligation to comply with ORS 90.320(1)," which imposes an obligation on landlords to "maintain the dwelling unit in a habitable condition"; and ORS 90.255 provides that in "any action on a rental agreement or arising under [ORS chapter 90], reasonable attorney fees at trial and on appeal may be awarded to the prevailing party together with costs and necessary disbursements, notwithstanding any agreement to the contrary."

No provision of the ORLTA, however, prohibits a landlord from contracting away their ability to terminate a tenancy for reasons that they would otherwise be entitled to under the ORLTA. Although plaintiff is correct that the ORLTA recognizes three types of tenancies, *see* ORS

90.100(38), and that the ORLTA provides landlords the ability to terminate tenancies, *see* ORS 90.427, the restriction on evictions in the rental agreement at issue in this case—*i.e.*, those found in Clause 22—are "more favorable to the tenant than the statutorily mandated terms," *Morat*, 294 Or App at 441, and are not prohibited by the ORLTA or any other rule of law. Accordingly, under ORS 90.220(1), the parties were permitted to agree to them.

We next turn to whether the agreement in this case is barred by public policy as plaintiff contends. As noted above, plaintiff contends that "a landlord's right to terminate a month-to-month rental agreement is a statutory right that cannot be waived" because "that right was granted to landlords by the legislature, at least in part for the public good," and that, therefore, any "purported waiver must be ignored as against public policy and therefore void and unenforceable."

In discussing this issue, it is helpful to note three general principles of Oregon contract law, as articulated by the Supreme Court in *Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 340 P3d 27 (2014). First, "It is a truism that a contract validly made between competent parties is not to be set aside lightly." *Id.* at 551 (citing *Bliss v. Southern Pacific Co. et al*, 212 Or 634, 646, 321 P2d 324 (1958) ("When two or more persons competent for that purpose, upon a sufficient consideration, voluntarily agree to do or not to do a particular thing which may be lawfully done or omitted, they should be held to the consequences of their bargain.")). Second, "The right to contract privately is part of the liberty of citizenship, and an important office of the courts is to enforce contractual rights and obligations." *Id.* And finally, "contract rights are not absolute"; "equally fundamental with the private right is that of the public to regulate it in the common interest." *Id.* (internal quotation marks and brackets omitted).

Thus, the Supreme Court has recognized that "Oregon does not enforce contracts that are unconscionable or otherwise violate public policy." *Trinity v. Apex Directional Drilling LLC*, 363 Or 257, 261, 434 P3d 20 (2018). "In determining whether an agreement is illegal because it is contrary to public policy, the test is the evil tendency of the

contract and not its actual injury to the public in a particular instance." *Bagley*, 356 Or at 552 (internal quotation marks and brackets omitted).

　　In this case, in support of her contention that the restrictions on termination of defendant's tenancy in the rental agreement violated public policy, plaintiff principally relies on *In re Leisure*, 336 Or 244, 82 P3d 144 (2003). That case concerned an attorney who entered into an agreement with the Professional Liability Fund (PLF). *Id.* at 246-47. The Bar asserted that, under the agreement, the attorney waived her right under ORS 9.200(1) to "a 30-day default period and 60 days' notice before being suspended for failure to make a PLF payment."[4] *Id.* at 252-53. ORS 9.200(1) provided, in relevant part, that:

> "'[A]*ny member in default in payment of assessed contributions to a professional liability fund under ORS 9.080(2) for a period of 30 days, shall, after 60 days' written notice of the delinquency, be suspended from membership in the bar.* The notice of delinquency shall be sent by the executive director, by registered or certified mail, to the member in default at the last-known post-office address of the member. Failure to pay the fees or contributions within 60 days after the date of the deposit of the notice in the post office shall automatically suspend the delinquent member.'"

*Id.* at 249 (quoting ORS 9.200(1); emphasis in *Leisure*).

　　In considering the issues before it, the court explained, "Statutory rights may be waived, but only to the extent that they serve no broader public policy but are directed solely to the protection of the individual who purports to waive them." *Id.* at 253. The court held that the notice and default period requirements of ORS 9.200(1) were "designed, at least in part, for the public good" and could not be waived, noting that:

> "permitting those provisions to be set aside by agreement would violate a legislative policy that is concerned more broadly with the public good. More specifically, ORS

---

[4] Since the Supreme Court's decision in *Leisure*, the legislature has amended ORS 9.200. *See* Or Laws 2013, ch 3, § 2; Or Laws 2015, ch 122, § 5; Or Laws 2017, ch 94, § 11. References to ORS 9.200 in this opinion are to the version of ORS 9.200 that was in effect at the time *Leisure* was decided.

9.200(1) strictly controls the manner of Bar suspensions for default on membership dues or PLF assessments, to ensure that the suspension process is orderly and that the Bar does not overstep its authority. That policy reflects a concern for the chaos that might result from unexpected and precipitous suspensions, not just for the suspended lawyer but for courts, opposing counsel, and, particularly, for clients. Unnoticed, eleventh-hour suspensions create a likelihood that clients will be left without counsel at critical moments in pending cases. The legislature's decision to specify notice and default period requirements for administrative suspensions authorized by ORS 9.200(1) is, in our view, a clear recognition of that concern."

*Id.* at 253-54.

The difficulty with defendant's reliance on *Leisure* is that the statute in that case, ORS 9.200(1), "strictly control[ed] the manner of Bar suspensions for default on membership dues or PLF assessments," reflecting legislative recognition of the "public good" protected by the notice and default period requirements in ORS 9.200(1). *Id.* at 253-54. Importantly, ORS 9.200(1) did not expressly provide attorneys and the PLF the ability to contract to notice and default terms other than those mandated by ORS 9.200(1).

In contrast, as noted above, under the ORLTA, the legislature expressly provided in ORS 90.220(1) that "[a] landlord and a tenant may include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law." As also noted above, we have interpreted that provision to, in effect, "free[] a landlord and tenant to include terms more favorable to the tenant than the statutorily mandated terms." *Morat*, 294 Or App at 441. Although the legislature expressly provided that in rental agreements tenants may not agree to "forgo rights or remedies under" the ORLTA, ORS 90.245(1), the ORLTA does not contain a broad prohibition against landlords forgoing rights and remedies under the ORLTA.

In both this case and *Leisure*, legislative policy is clear: In *Leisure*, legislative policy was clear, in part because the legislature expressly mandated the notice and default provisions in ORS 9.200(1), and did not statutorily provide attorneys and the PLF with the ability to waive them. Here,

legislative policy is clear, because under the ORLTA, the legislature allowed landlords to forgo the rights and remedies that otherwise would be available to them, as long as doing so is not prohibited. ORS 90.220(1). Although the purpose of the ORLTA as a whole is to protect the public, *see LeBrun*, 197 Or App at 183-84, we reject the notion that "public policy" prohibits a landlord from doing what the legislature has allowed landlords to do.[5]

We also observe that, even if a landlord has bargained away their ability to terminate a tenancy for a reason that the landlord would otherwise be entitled to terminate the tenancy under the ORLTA, a landlord is not without remedies to protect their property from harm by a tenant. For example, ORS 90.401(2) expressly provides that "a landlord may recover damages and obtain injunctive relief for any noncompliance by the tenant with the rental agreement or ORS 90.325," which governs tenant duties.[6] And,

---

[5] To bolster her position, plaintiff sets forth a number of consequences that might arise if we conclude that a landlord can bargain away their ability to terminate a tenancy for reasons that they otherwise would be entitled to terminate the tenancy under the ORLTA, *viz.*, (1) "termination may be necessary to serve a fundamental ORLTA policy of providing habitable dwellings to Oregon tenants"; (2) "giving effect to the purported waiver of [a landlord's] right to terminate * * *, encourages blight because a landlord may be financially forced to abandon his responsibilities to repair and maintain the dwelling if it becomes unprofitable to do so"; (3) "no-cause evictions allow landlords to terminate tenancies when tenants violate local nuisance ordinances, which violations may not be violations of the ORLTA or the rental agreement"; (4) "no-cause terminations facilitate a landlord's ability to terminate a tenant who is aggressive towards other tenants at an apartment complex"; and (5) and giving effect to the rental agreement in this case would have the effect of restraining "the alienability of private property."

We do not discount that there may be some merit to plaintiff's policy concerns. However, we understand ORS 90.220(1) to mean what it says: "A landlord and a tenant may include in a rental agreement terms and conditions not prohibited by this chapter or other rule of law including rent, term of the agreement and other provisions governing the rights and obligations of the parties."

There is no prohibition in the ORLTA or any other rule of law prohibiting landlords from bargaining away their ability to terminate a rental agreement for reasons that the landlords would otherwise be entitled to do so under the ORLTA. Rather, ORS 90.220 "frees a landlord and tenant to include terms more favorable to the tenant than the statutorily mandated terms." *Morat*, 294 Or App at 441.

[6] ORS 90.325 requires the tenant to, among other things, use "the parts of the premises * * * in a reasonable manner considering the purposes for which they were designed and intended"; keep "all areas of the premises under control of the tenant in every part as clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin as the condition of the premises permits and to the extent that the tenant is responsible for causing the

in this case, Clause 11 of the rental agreement requires the tenant to "reimburse Landlord, on demand by Landlord, for the cost of any repairs to the premises damaged by Tenant or Tenant's guests or business invitees through misuse or neglect."

In sum, we conclude that neither the ORLTA nor public policy prohibit a landlord from bargaining away the landlord's ability to terminate a tenancy for reasons that the landlord would otherwise be entitled to do so under the ORLTA. To the extent that there might be some contractual terms that public policy would preclude, a contractual term waiving the right to terminate a tenancy without cause is not one of them.

We emphasize, however, that our analysis in this opinion is limited to considering the parties' arguments under the ORLTA as it existed prior to passage of SB 608; that is, under the ORLTA as it existed at the time that plaintiff purported to terminate defendant's tenancy. We express no opinion on how the parties' arguments would fare under the current version of the ORLTA.

Consequently, we affirm the general judgment and supplemental judgment.

Affirmed.

---

problem"; dispose "from the dwelling unit all ashes, garbage, rubbish and other waste in a clean, safe and legal manner"; and use "in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appliances." It also provides that a tenant shall not "[d]eliberately or negligently destroy, deface, damage, impair or remove any part of the premises or knowingly permit any person to do so."