570 August 28, 2024 No. 595

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

THORIN PROPERTIES LIMITED PARTNERSHIP,
an Oregon Limited Partnership, and
Jennings Group, INC.,
an Oregon Corporation,
*Plaintiffs-Respondents,*

*v.*

CITY OF EUGENE,
an Oregon municipal corporation,
*Defendant-Appellant.*

Lane County Circuit Court
22CV37548; A180847

Erin A. Fennerty, Judge.

Argued and submitted June 3, 2024.

Lauren Sommers argued the cause and filed the brief for appellant.

Marcel Gesmundo argued the cause for respondents. Also on the brief was Andor Law.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant City of Eugene appeals a judgment enjoining it from enforcing Eugene Code 8.425(14), an ordinance which imposes a $10 cap on applicant screening fees charged by landlords. The trial court enjoined enforcement of the ordinance because it concluded that it is preempted by the Oregon Residential Landlord and Tenant Act (ORLTA).[1] On appeal, the city contends that the trial court erred in determining that plaintiffs—a group of owners and managers of residential rental properties in Eugene—have standing to pursue the declaratory action, and in ruling that the ordinance is preempted. For the reasons discussed below, we conclude that the trial court correctly determined that plaintiffs have standing but erred in concluding that the ordinance is preempted. Accordingly, we reverse and remand.

Plaintiffs filed suit, seeking a declaration that the ordinance's imposition of a $10 screening fee cap is invalid and an injunction preventing its enforcement. Plaintiffs then moved for partial summary judgment, arguing that the ordinance was preempted by an ORLTA provision permitting landlords to charge applicants a fee for application screening charges. In response, the city argued that plaintiffs had not established standing nor that the ordinance was preempted. The trial court agreed with plaintiffs on both points, reasoning that ORLTA "operate[s] to secure a landlord's right to collect an applicant screening charge that covers the landlord's actual screening charge," and because the two laws cannot operate concurrently, the state statute preempts the city ordinance. The city timely appealed.

In its first assignment of error, the city contends that the trial court erred in granting plaintiffs' motion for partial summary judgment because plaintiffs did not establish that they collect application screening charges and, therefore, do not have standing to sue.

We "review a trial court's grant of summary judgment for legal error, and we will affirm if there are no genuine issues as to any material fact and the moving party is

_____

[1] Chapter 90 of the ORLTA was amended in 2024; however, because those amendments do not affect our analysis, we refer to the current version of the relevant statutes in this opinion.

entitled to judgment as a matter of law." *Towner v. Bernardo/ Silverton Health*, 304 Or App 397, 400, 467 P3d 17, *rev den*, 367 Or 115 (2020). In determining whether the trial court erred in granting summary judgment, "we view the facts and all reasonable inferences that may be drawn from them in the light most favorable to the non-moving party"—here, the city. *Id.* (internal quotation marks omitted). Whether plaintiffs had "standing to bring a declaratory judgment action is a legal question, which we review for legal error." *Oregon Restaurant and Lodging Assn. v. City of Bend*, 313 Or App 772, 777, 497 P3d 306 (2021).

In order "to have standing to seek a declaration with respect to a[n] [ordinance], a plaintiff must show that it has a legally recognized interest that is adversely affected by" that ordinance. *MT& M Gaming, Inc. v. City of Portland*, 360 Or 544, 566, 383 P3d 800 (2016). Specifically, plaintiffs must satisfy three requirements: (1) they have a legally recognized interest; (2) the ordinance's impact on plaintiffs' legally recognized interest is not hypothetical or speculative; and (3) a ruling invalidating the ordinance would remedy the harm. *Morgan v. Sisters School Dist. No. 6*, 353 Or 189, 195-97, 301 P3d 419 (2013) (setting forth standing requirements).

On appeal, the city's argument focuses on the first prong of the standing framework—whether plaintiffs hold a legally recognizable interest that is affected by the ordinance. The city contends that plaintiffs do not have a recognizable interest because plaintiffs do not collect an applicant screening fee directly from applicants entering into rental agreements; rather, a third party collects the fee. *See* ORS 90.100(3) (defining "applicant screening charge" as "any payment of money required by a landlord of an applicant prior to entering into a rental agreement * * * "). However, plaintiffs produced undisputed evidence—including declarations and depositions—to demonstrate that they suffered financial harm due to the screening cap. Specifically, plaintiffs Thorin and Jennings Group produced evidence that, since the ordinance has gone into effect, they pay their management companies $35 and $50 more, respectively, per applicant screening charge. That financial impact—regardless of

whether it results from a direct collection of funds or through a third party's collection of those funds—is a legally recognized interest. *See Oregon Restaurant and Lodging Assn.*, 313 Or App at 778-80 (no dispute that the plaintiffs satisfied the first standing prong where an ordinance decreased the percentage of total tax revenues that are expended to promote tourism, thus financially impacting plaintiffs whose businesses depend on tourism). Accordingly, the trial court did not err in concluding that plaintiffs had standing because they demonstrated a recognized legal interest.

In its second assignment of error, the city contends that the trial court erred in ruling that ORLTA preempts the ordinance. We review whether the city's "ordinance is a valid exercise of its home rule authority [and] not preempted by state law" for errors of law. *City of Corvallis v. Pi Kappa Phi*, 293 Or App 319, 320-21, 428 P3d 905 (2018). Plaintiffs agree that the city had authority to pass the ordinance under principles of home rule, but they contend that the ordinance is preempted by ORS 90.295.

ORLTA does not, by its terms, expressly preempt local ordinances, so the question is whether it does so by implication. *Qwest Corp. v. City of Portland*, 275 Or App 874, 883, 365 P3d 1157 (2015), *rev den,* 275 Or App 874 (2016) ("A state law can preempt a municipal law in two ways," either by express preemption or implied preemption.). A state law will preempt a municipal law by implication if the two "cannot operate concurrently." *Id.* (internal quotations marks omitted). To determine whether a state law impliedly preempts a local ordinance, we "interpret both [state law] and the [ordinance] to determine if they can function concurrently or if they necessarily conflict." *Id.* We examine the state statute's "text and context, as well as any legislative history that is helpful" to that analysis. *Id.* And "[w]hen conducting that conflict analysis, we must construe the local law, if possible, to be intended to function consistently with state laws." *Id.* (internal quotation marks omitted). We begin by discussing the ordinance and then the relevant ORLTA provisions.

The Eugene ordinance is part of the "City Rental Housing Code," which, according to the city code, "is to supplement rather than conflict with [ORLTA]." Eugene Code

8.405. The ordinance provides that "the amount of any applicant screening charge may not exceed the amount of an applicant screening charge allowed by ORS 90.295 or $10, whichever is less." The ordinance defines "application screening charge" as "[a]ny payment of money required by a landlord of an applicant prior to entering into a rental agreement with that applicant for rental housing, the purpose of which is to pay the cost of processing an application for a rental agreement for rental housing." Eugene Code 8.415.

Turning to state law, ORLTA is a comprehensive statutory scheme that "regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state." ORS 90.115. Overall, "the purpose of the ORLTA *** is to protect the public." *Stanton v. Medellin*, 308 Or App 376, 387, 481 P3d 1004 (2021).

ORS 90.140 specifies the types of payments a landlord may require, which, like the Eugene ordinance, include an application screening charge. And, as in the Eugene ordinance, an application screening charge is defined as "any payment of money required by a landlord of an applicant prior to entering into a rental agreement with that applicant for a residential dwelling unit, the purpose of which is to pay for the processing of an application for a rental agreement for a residential dwelling unit." ORS 90.100(3). That payment is "solely to cover the costs of obtaining information about an applicant as the landlord processes the application for a rental agreement." ORS 90.295(1)(a).

A landlord's ability to collect an application screening charge under ORLTA is not unrestricted. ORS 90.295(2) imposes a cap on such charges: "The amount of any applicant screening charge must not be greater than the landlord's average actual cost of screening applicants[.]" That statute limits the amount a landlord may charge an applicant for a screening, but does not set a specific dollar amount. *Id.*; *see also* Testimony, House Business Subcommittee on Commerce, HB 2968, Apr 12, 1993, at 57:45 (statement of John Vanlandingham, Multi-Family Housing Council) (noting that ORS 90.295 does not "set a flat maximum dollar figure, because [that] amount varies by regions of the state").

With that context in mind, we conclude that the trial court erred in determining that the ordinance is preempted by ORS 90.295(2). ORS 90.295(2) authorizes landlords to charge a screening fee, and the ordinance limits that screening fee to $10. A landlord can comply with both the state law and the ordinance by not charging more than $10 per screening. To be sure, the ordinance implements a tight restriction; however, "we are reluctant to assume that the legislature, in adopting statewide standards, intended to prohibit a locality from requiring more stringent limitations within its particular jurisdiction." *Oregon Restaurant Assn v. City of Corvallis*, 166 Or App 506, 511, 99 P2d 518 (2000). Indeed, we have consistently determined that a local ordinance may impose greater restrictions or requirements than a state statute without being preempted by it. *See Schwartz v. Washington County*, 332 Or App 342, 359, 550 P3d 20 (2024) (holding that "[b]ecause a retailer can comply with both Oregon's scheme for [tobacco retail licensure] and [Washington County Ordinance] 878's prohibition on the sale and distribution of flavored tobacco and flavored synthetic nicotine products in Washington County by not selling those products in Washington County, compliance with both [the county ordinance] and [the state tobacco retail licensure statutes] is not 'impossible.'"); *Thunderbird Mobile Club, LLC v. City of Wilsonville*, 234 Or App 457, 460, 228 P3d 650, *rev den*, 348 Or 524 (2010) (concluding that ordinances requiring owners of mobile home parks to obtain a closure permit from the city and compensate displaced tenants were not preempted by ORLTA, even though "the ordinances impose[d] greater requirements on owners of mobile home parks than mandated by the" state statutes); *Oregon Restaurant Assn.*, 166 Or App at 508-09 (concluding that a prohibition on smoking in *all* enclosed public places was upheld, notwithstanding the less extensive regulations of the Oregon Indoor Clean Air Act). Because compliance with both the city ordinance and state law is not impossible, ORS 90.295(2) does not preempt the ordinance.

Plaintiffs contend that ORLTA contains a "right" for landlords to recover the actual cost of applicant screening that the ordinance infringes upon. Because ORS 90.295(2) "places a limitation" on a landlord's right to recover "no

more" than the screening costs, plaintiffs argue that the statute "only serves to reinforce the existence" of that right. However, nothing in the plain text of ORS 90.295(2) or its context or legislative history provided by the parties indicates that a landlord has a *right* to charge an applicant up to the average actual cost of the screening charge; ORS 90.295(2) only provides that a charge is not permitted to *exceed* the average actual cost. We will not read a right into a statute if the text does not support it. *Dymock v. Norwest Safety Protective Equipment*, 334 Or 55, 60, 45 P3d 114 (2002) ("We decline to read into [the statute] a right that the legislature has not chosen to create." (Citing ORS 174.010.)). The legislature can make the policy choice that plaintiffs desire—that landlords must be entitled to recoup the entire cost of applicant screening—however, the text of the statute does not reflect that choice.

In sum, we conclude that the trial court correctly determined that plaintiffs had standing, but that it erred in concluding that Eugene Code 8.425(14) is preempted by ORS 90.295(2).

Reversed and remanded.